CAIUS MᴄKINNON *vs.* JAMES A. NORCROSS & another.

Suffolk.    January 14, 1889. — February 28, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Negligence of Fellow Servant
— Proper Tools and Appliances — Evidence.*

A foreman, employed by a firm of contractors and in charge of a building in process of erection, undertook to move a derrick with the assistance of laborers in their employ, one of whom had worked about derricks more or less for five years; and the derrick, through the breaking of a rope furnished by them, fell and injured a carpenter, who was also employed by them and at work on the building under the foreman's direction. There were at hand, furnished by the contractors, all the tools, materials, and appliances needed to move the derrick safely. *Held,* in an action against the contractors to recover for the injuries, that, in the absence of evidence that the foreman was not a proper person to be intrusted with the work, or that the rope which broke was not strong, there was no negligence shown on the part of the contractors.

Evidence of a conversation with the foreman after the accident, in which he told how it happened, was *held* to be rightly excluded.

TORT for personal injuries occasioned to the plaintiff by the alleged negligence of the defendants while he was in their employment.

At the trial in the Superior Court, before *Barker,* J., the plaintiff testified that he was a carpenter, and was at work in May, 1887, for the defendants, who were a firm of contractors doing business all over the country under the name of Norcross Brothers; that they were then engaged in the building of a railroad station at Allston; that he was hired by John Bernard, in charge of the job, to work upon the building; that he had worked for Norcross Brothers all the previous summer under the same foreman; that he had known John Bernard as foreman for quite a while, and knew him as always careful, — as far as he knew there was never anything indicative of want of care on his part as foreman, — he was prudent in his work and his superintendence of men; that while he was laying floor in the station with other carpenters, Bernard and some of the workmen were engaged in raising and moving a derrick, by the use of which the work was being carried on, to a new position

upon the floor of the station ; and that while they were engaged in so doing, the derrick fell, knocking him down and causing the injuries.

Philip Ceirns testified that he was a common laborer, and had worked around derricks more or less for five years ; that he had worked for the defendants for four or five years, and was at work for them in May, 1887, on the Allston railroad station under Bernard; that the derrick was from forty to forty-five feet high, supported by wire rope guys, each of which was three fourths of an inch in diameter; that the west guy was fastened to the lower girder of an iron railroad bridge near by; that before the derrick was raised, this guy was fastened to the bridge by a chain ; that he assisted in loosening the guys before they began to lift the derrick; that he took an iron clamp and put it on the standing part of the west guy running to the masthead of the derrick; that he then took a three-inch manilla rope, which he got out of a locker of tools and materials furnished by the defendants, and made it fast to the guy in front of the clamp; that he then brought the manilla rope back to the bridge and took a turn around the girder where the chain was, and made it fast ; that he then threw the wire rope loose, so that the guy was connected with the girder by the manilla rope alone; that he then slackened up both the south guy and the west guy until the foreman told him to stop, whereupon he made the two guys fast, the west guy being fastened in the same way as before by means of the manilla rope; that, later, they began to raise and move the derrick; whereupon it fell, and he saw the plaintiff fall into the cellar; and that "it was the west guy that gave way. I went back then, because I thought it was my fastening that gave out. I found the manilla rope on the west guy parted, about two feet from the clamp."

Ceirns also testified that there were at the Allston station five clamps at the time of the accident, each with a full set of bolts ; that there was in the locker a whole coil of new rope; that there was also there one watch tackle, which was reeved ready for use, and another which was not reeved; that he put the clamp on the standing rope of the guy to hold the manilla rope and to prevent it from slipping, and that it was fastened to the guy about two feet from the girder of the bridge ; that it was about twenty

feet from the bridge to the foundation of the station; that the derrick fell towards the east, in a direction opposite to the position of the west guy; that when he took the clamp out of the locker he looked to see if the bolts were all right, and noticed that they were not worn; that the foreman sent him to loosen the west guy; that the rope was broken two or two and a half feet from the clamp; that after the derrick fell he took the manilla rope off the clamp " before any one else touched the clamp; that the clamp was on all right"; that " it was the same as I left it"; that tarred twine or lashing was sometimes used on wire rope, but there was none about the premises at Allston; that he did not know who took the clamp off the wire rope after the derrick fell, but he saw the clamp on the afternoon of the accident in the hand of Bernard, who threw it into the locker; and that " the iron girders of this bridge had a wooden guard on, — two pieces of wood where the rope went round; I have observed since that the edges on the bottom of the girder were exposed and sharp; the manilla rope rendered round those girders."

The plaintiff then offered in evidence a conversation had with the foreman that afternoon, while he had a clamp in his hand, as to how the accident had happened; but the judge excluded it, and the plaintiff excepted.

John Walsh testified : " I see the clamps that was put on in the first place. I see this rope parted, but paid no particular attention to it. It was right after the accident. The rope was hitched right to the clamp, and parted two or three feet from the other side of the clamp. Found them about twelve feet middleways between bridge and the foundation. Did n't look at the end of the rope tied to the bridge. I see but one tackle and fall on the premises at that time. That was in the locker at the time I see it. There was one reeved sure. I see blocks there, but did not see them reeved. Don't know why they were not reeved. I see a fall there to reeve them. One fall reeved. I saw the blocks, but a rope was n't in them. The blocks that were reeved were hanging in the locker, I believe. When I came there first, they were on the job. Never saw tarred lashing or twine there. . . . There was a fall there ready to reeve in, — a rope, I mean. There was a coil of new rope there."

The plaintiff called various derrick riggers as experts, who

testified, in substance, that they had visited the place of the accident, and found that the edges of the iron bridge girder to which the manilla rope was fastened were quite sharp; that they did not consider that it was safe to fasten a manilla rope to the iron girder in the way described, because the sharp edges of the iron when the rope was slackened would be likely to cut it off; that lifting and moving the derrick in the manner adopted by Bernard was not a safe way in which to do it, and that it was only done to save time; that a watch tackle should have been used to ease off the strain on the rope; and that they did not consider the use of a clamp without a seizing or lashing around the wire rope guy safe, because such a clamp was liable to slip.

Upon this evidence, the judge ruled that the action could not be maintained, and ordered a verdict for the defendants, and reported the case for the determination of this court. If the ruling was correct, judgment was to be entered on the verdict; otherwise, the case was to stand for trial.

*J. A. McGeough*, for the plaintiff.

*W. S. B. Hopkins*, for the defendants.

KNOWLTON, J. It was the duty of the defendants to procure competent and proper workmen in the business in which the plaintiff was engaged, and to provide for them suitable tools and appliances, so far as that could be done by the exercise of ordinary care and diligence. The plaintiff affirms, and the defendants deny, that the injury to the plaintiff resulted from neglect of this duty. There was no evidence that the foreman in charge of the work was not a proper person to be intrusted with it. The plaintiff testified that he had known him a long time as a foreman, and had worked under him all the summer before the accident, and had found him always careful and prudent in his work and in his superintendence of men. There was no evidence that the other workmen upon the derrick needed to have special skill or experience, if the foreman was competent. Moreover, it appeared that one of them had worked around derricks more or less for five years. The jury would not have been warranted in finding negligence of the defendants in the selection of their servants.

There was evidence from experts tending to show that a rope fastened as the manilla rope was might have slipped, and also

that it might have been cut, and so have broken, where it was fastened around the iron girder. But the testimony was undisputed that this rope did not slip, and that the fastening was in the same condition after the accident as before. It was also proved that the rope did not break at or near the girder, but it parted at a point between the girder and the wire rope, about two feet or two feet and a half from the clamp where it was fastened to the wire rope. If there was negligence in the method adopted for moving the derrick, it was negligence of a fellow servant of the plaintiff, for which the defendants are not liable.

The manilla rope was the only part of the materials or appliances which had any causal relation to the accident. There was evidence that tarred yarn should have been provided for use in fastening the manilla rope to the wire rope to prevent slipping; but that evidence was immaterial in this case, for the rope did not slip. It was proved, and not disputed, that everything else which could properly have been used in the work was supplied by the defendants. There was no testimony that the rope which broke was not strong. If it was in fact unsound, a coil of new rope was there ready for use. There was no testimony nor suggestion that the new rope was not of proper size and quality. There was evidence that, instead of a single rope made fast at both ends, a tackle of some kind should have been used, by which the rope could have been slackened and the strain diminished. The defendants had made ample provision for this. There was one tackle there in the locker with the ropes reeved into the blocks, and, if more were needed, other blocks were there with a plenty of new rope ready to be reeved into them.

Properly to use pulleys, blocks, ropes, and other ordinary tools and appliances which have been furnished by a master to the workmen employed upon a derrick, is a part of the duty of the workmen. It is incidental to the management and use of the derrick. In working with a derrick, the foreman and his assistants are fellow servants; and the master is not responsible to any one of them for the negligence of any other in the use of the materials and implements which the master has supplied. *Kelley* v. *Norcross*, 121 Mass. 508. *Colton* v. *Richards*, 123 Mass. 484. *McDermott* v. *Boston*, 133 Mass. 349. *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209. *Moynihan* v. *Hills Co.*

146 Mass. 586. *Daley* v. *Boston & Albany Railroad*, 147 Mass. 101. There was no evidence of negligence on the part of the defendants.

Evidence of the conversation with the foreman, in which he told how the accident happened, was rightly excluded. *Williamson* v. *Cambridge Railroad*, 144 Mass. 148.

*Judgment for the defendants.*