## Augustus H. Moody vs. Hamilton Manufacturing Company.

Middlesex.     March 8, 1893. — May 17, 1893.

Present: Field, C. J., Allen, Holmes, Morton, & Lathrop, JJ.

*Personal Injuries — Master and Servant — Fellow Servant.*

A master is not responsible, at common law, for the negligence of a superior ser-
vant, even in giving orders, whereby injury is sustained by an inferior servant;
and the rule applies where the superior servant is the foreman or the superin-
tendent, and the inferior servant a laborer.

Tort, for personal injuries occasioned to the plaintiff while in the defendant's employ. Tne second count of the declaration was as follows:

" And the plaintiff says that on or about April 15, 1891, while the plaintiff was in the employ of the defendant as a servant for hire, and in the exercise of due care, he received great personal injuries owing to the carelessness and negligence of the defendant and its agents directing him to work on or about a carboy of vitriol or sulphuric acid which was defective and dangerous, and the defendant and its agents carelessly and negligently failed to notify the plaintiff of the danger he was subjected to, and while the plaintiff was handling said carboy he received great personal injuries from vitriol striking him, to the damage of the plaintiff, as he says, the sum of thirty thousand dollars."

At the trial in the Superior Court, before *Hopkins*, J., the plaintiff and two other witnesses testified that he was at work for the defendant in its yard as a yard hand, and worked in the coal shed as a third hand; that he was subject to the direction of one Garner, who was the defendant's yard-master and over-seer; that on the day of the injuries received by the plaintiff he was at work in the coal shed when he was called out to a wagon on which was a load of carboys filled with vitriol or sulphuric acid, and that he was directed by Garner to remove one of the carboys from the wagon, and in doing so the vitriol was spilled over him and destroyed his eyesight, and he was other

wise injured; that he did not know that the carboy, which was inside a box, was broken, or that its contents were liable to be spilled over him; that he had to grab hold of it in an instant, and everything was done in a hurry; that neither the defendant nor any one else gave him any warning about this carboy having been broken, and that he did not know it was broken; that he had never worked taking off carboys of vitriol before, and that the carboy at this time looked all right when he went to take it off.

One Greene, a team hand who was in the defendant's employ, testified that this carboy of vitriol was taken from the Boston and Maine Railroad station to the place where it broke; that he sat on this same carboy of vitriol when it was on the wagon, on the way to its destination; that the wagon on which it was carried was a dead axle truck, and that it was carried over streets that were paved, and across both steam and horse car tracks, and that upon almost every load of vitriol carried in this manner one of the carboys would break; that he remembered that this one was broken on its way to the yard in crossing the railroad track on Jackson Street; that he heard Garner tell the plaintiff to take off this carboy, and to do it quickly; and that he, Greene, informed Garner that it was broken.

Garner testified that he was overseer of the yard in the employ of the defendant; that he knew this carboy was broken, as he saw vitriol on the ground and had dirt thrown over it, and that he sent for men from the coal shed; that when he gave the order to have the carboy taken from the team, Moody was nearest him; that when Moody had hold of the carboy taking it off, he yelled to him not to do it alone, but to have somebody help him; and that Moody pulled it off, letting it fall to the ground. These last two statements the plaintiff denied. Garner further said, that the plaintiff about ten minutes after said that it was his own fault; but this the plaintiff also denied.

One Bingham testified for the defendant substantially as the defendant's overseer.

One McGee, who testified for the defendant, said that he saw the carboy leaking; and that he shovelled dirt and threw water on it. He corroborated Garner.

There were three counts in the plaintiff's declaration under

the common law ; and having been ordered to elect, the plaintiff elected to go to the jury on the second count; whereupon the defendant's counsel asked the court to rule that, upon all the evidence, the plaintiff could not maintain the action, and to direct a verdict for the defendant.· The court ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*P. J. Hoar*, for the plaintiff.

*G. F. Richardson & G. R. Richardson*, (*D. M. Richardson* with them,) for the defendant.

LATHROP, J.   There is no evidence in this case of any negligence on the part of the defendant in respect to its selection of a competent overseer and competent servants.   So far as the · evidence shows negligence on the part of any one it is on the part of one Garner, who was the defendant's yard-master, and who exercised authority over the plaintiff, who was a yard man.

While there is a conflict of authority in this country on the subject, the rule is well established in this Commonwealth that the fact that one servant has control over another is immaterial, and that a master is not responsible, at common law, for the negligence of a superior servant, even in giving orders, whereby· injury is sustained by an inferior servant.

In *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198, 203, it is said by Mr. Justice Field: "It is settled in this Commonwealth that all servants employed by the same master in a common service are fellow servants, whatever may be their grade or rank."

The following cases illustrate the rule that a master is not liable to an inferior servant for the negligent act of a superior servant.   *Hodgkins* v. *Eastern Railroad*, 119 Mass. 419, a case of a brakeman and a station agent.   *Walker* v. *Boston & Maine Railroad*, 128 Mass. 8, a case of a laborer and road-master.   The same rule applies where the superior servant is the foreman of a contractor, and the inferior servant a laborer.   *Summersell* v. *Fish*, 117 Mass. 312.   *O'Connor* v. *Roberts*, 120 Mass. 227, 228. *McKinnon* v. *Norcross*, 148 Mass. 533.   Or the superintendent. *Zeigler* v. *Day*, 123 Mass. 152.   *Floyd* v. *Sugden*, 134 Mass. 563.

A negligent order falls within the same rule, whether given to the servant injured or to another servant whose act in obedience to the order causes the injury.

Thus in *Albro* v. *Agawam Canal Co.* 6 Cush. 75, a corporation was held not to be liable to a spinner in its employ by the negligent order to a third person of its superintendent, who had the general supervision and charge of its establishment.

In *Benson* v. *Goodwin*, 147 Mass. 237, the owners of a vessel were held not to be liable for a negligent order given by the mate to one sailor, whereby another sailor was injured.

In *Duffy* v. *Upton*, 113 Mass. 544, workmen were raising a piece of timber by a derrick, when, the timber meeting with an unlooked for check, the foreman cried out, " Give another hoist and take it up." They did so, the derrick broke, and one of the workmen was injured. The employer was held not to be liable.

In *Flynn* v. *Salem*, 134 Mass. 351, the plaintiff, a laborer, was employed by the defendant to assist in digging a trench. He was injured by the caving in of the sides of the trench. The declaration alleged as the act of negligence, that the superintendent of the work directed the plaintiff to dig in the trench when it was dangerous to do so, and when the superintendent knew that it was dangerous. A demurrer to the declaration was sustained, on the ground that the only negligence alleged was that of a fellow servant with the plaintiff.

There is nothing in the case of *Patnode* v. *Warren Cotton Mills*, 157 Mass. 283, which conflicts with this well settled doctrine, or which was intended by the court to countenance the view which prevails in some jurisdictions, that a superior servant is a vice principal or an *alter ego*. The plaintiff in *Patnode* v. *Warren Cotton Mills* was a boy of fourteen, who was set to work on a dangerous machine by one McKeon, without receiving proper instructions. There was a conflict of evidence on the question whether McKeon had authority to direct the plaintiff to work on the machine, and whether the plaintiff was not a volunteer. The remarks of the court are directed to this question.

The question of the effect of a negligent order given by a superior servant to an inferior servant upon the liability of the master was not argued by counsel in that case, nor considered by the court.

*Exceptions overruled.*