Rockingham, }
April 7, 1903. }

## GALVIN *v.* PIERCE.

A laborer employed in excavating rocks and attaching chains thereto, and a foreman who directs the operation of a derrick by which the stones are hoisted, are fellow-servants within the rule exempting the master from responsibility for an injury to one servant resulting from the negligence of another engaged in the common employment.

A master is not liable to his servant for an injury resulting from improper directions by a foreman in charge, if such orders were given in the execution of work properly delegable to an employee, as a detail of the service, and did not pertain to a duty which the master was personally bound to perform.

CASE, for negligence. Transferred from the April term, 1902, of the superior court by *Pike*, J.

The plaintiff's evidence tended to prove the following facts: The plaintiff, a man twenty-nine years of age, was in the service of the defendant at the time of the injury complained of, and had been employed in the same labor between seven and eight months. His work was excavating earth and stone. His duty was to dig around rocks that were to be taken out and to attach chains thereto, so that they could be hoisted by a steam crane to a car upon which they were removed from the place. The defendant was a contractor, and one Rombeau had charge of the work as boss, which included the control of the men and the operation of the crane. He also had charge of the tools and of everything connected with the work, and had the general direction of the men as to the places of their work. March 14, 1901, the plaintiff, having dug the earth from about a stone, said to Rombeau that the chain he had was too large and awkward, that he could not get it around the stone very well, and asked Rombeau to get him a smaller and handier chain with which to do the work. Rombeau attempted to find such a chain, but was unable to do so, and told the plaintiff he must get along with the one he had. The plaintiff then adjusted the chain. The stone being a long one and the chain a little slack, the load began to swing when it was hoisted by the crane. Rombeau gave instructions to the engineer operating the crane to lower the stone in order to stop the swinging. The plaintiff then told Rombeau that the chain was not right on the stone, that it was not safe, and asked Rombeau to wait until he fixed it. The plaintiff took hold of the chain, but Rombeau immediately remarked to the engineer, " Go ahead; the chain is all right." The engineer raised the stone, and in so doing, the chain caught the plaintiff's hand and injured it.

At the close of the plaintiff's evidence a nonsuit was ordered upon motion of the defendant, and the plaintiff excepted.

*Simon P. Emery* and *Ernest L. Guptill*, for the plaintiff.

*John Kivel* and *George T. Hughes*, for the defendant.

PARSONS, C. J.   The plaintiff's duty was " to dig around rocks that were to be taken out and to attach chains thereto, so that they could be hoisted by a steam crane."   Rombeau had charge of the defendant's work as boss, " which included  .  .  .   the operation of the crane."   At the time of the accident the plaintiff's duty had been performed; he had attached the chain.   Rombeau was in the execution of his—the operation of the crane.   The stone had been pulled out, and lowered to stop its swinging. The next operation in Rombeau's work was the raising of the stone.   " The plaintiff then told Rombeau that the chain was not right on the stone, that it was not safe, and asked Rombeau to wait until he fixed it.   The plaintiff took hold of the chain, but Rombeau immediately remarked to the engineer, ' Go ahead; the chain is all right.' "   The engineer hoisted on the stone, and the chain caught the plaintiff's hand and injured it.

If the defendant is liable for Rombeau's negligent operation of the crane, the plaintiff cannot recover without establishing Rombeau's negligence as the cause of the injury and his own freedom from fault.   Whether the case contains evidence upon which these propositions could reasonably be found in favor of the plaintiff, may be open to doubt.   But assuming that there was competent evidence for the jury upon these issues, a verdict might be found against Rombeau, or against the defendant if the defendant had personally performed the acts charged as negligence in Rombeau.   The right of action in such case would not be affected by the fact that the plaintiff was a workman under Rombeau, or an employee of the defendant; but the action would be based upon the general duty, resting upon every individual in the conduct of his lawful business, to abstain from the careless injury of others. *Nashua Iron and Steel Co.* v. *Railroad,* 62 N. H. 159, 161.   If the plaintiff were a stranger,—an innocent third party injured by the negligent operation of the machine,—it would be immaterial whether the actual operation was in the charge of the defendant in person or in that of his employee or agent.   The rule *respondeat superior* would apply.   As to third persons, the act of Rombeau would be the act of the defendant.   *Qui facit per alium, facit per se.*   But it appears from the plaintiff's case that both he and Rombeau were the defendant's servants.   The plaintiff's action, therefore, is not founded upon the maxim *respondeat superior,* but upon

an alleged breach of duty owed by the defendant as master to the plaintiff as his servant. The mutual rights and duties of the master and servant are usually regarded as flowing from the contract for service. Whether the reciprocal rights and duties of the relationship depend upon the stipulations of a contract, or upon rules of law adopted as matter of public policy upon grounds of reasonableness, is not material. The general principles governing the relationship are well settled. The master is bound to reasonable care to provide the servant with suitable instrumentalities for the work. This includes place, machinery, associates in the work, and, where necessary, suitable rules and regulations for its conduct. *McLaine* v. *Company*, 71 N. H. 294.

Being guilty of no want of care in furnishing or maintaining these instrumentalities, the master is not liable if injury otherwise results to the servant. If to render the place safe it is reasonable a mechanical notice of intermittently recurring danger to the employee should be provided, it is the duty of the master to exercise care to provide and maintain some device for that purpose, as the bridge guard upon railways. If such care has been exercised, the master is not liable if for some other cause in a particular case the device fails to effect its purpose. *Hardy* v. *Railroad*, 68 N. H. 523. So if for the servant's safety it is reasonable that some person should be provided to give a warning from time to time, the master, having exercised care to provide a suitable person, is not liable if in a particular instance the warning is not given. *McLaine* v. *Company, supra*. In short, the master is not an insurer of the servant's safety. One obligation of the master is to exercise care to provide reasonably competent persons to engage in the work. If this duty has been performed, he is not liable if one servant is injured by the negligence of another servant engaged in the common work. Either because such a rule has been considered reasonable as governing the relationship of the parties, or because, in the absence of an express contract, the parties must be understood to have made a reasonable one, including the reasonable stipulation that the servant will assume the risk of injury from the negligence of his fellows engaged in the common work, such assumption of risk is now a settled rule of the law of master and servant. As the master, as the law is now settled, is not liable for an injury resulting to one servant from the negligence of a fellow-servant in the course of their common employment, the question now arising for controversy in particular cases is whether the negligent person is to be regarded as a fellow-servant of the one injured. In this jurisdiction " the responsibility of the master is determined by the nature of the act in question, and not by a difference in rank or grade of service between particular servants." *McLaine* v. *Com-*

*pany*, 71 N. H. 294, 295. Accordingly it has been held that the master is liable where the negligent act in question was one which it was his duty to perform, although in fact performed by inferior servants (*Jaques* v. *Company*, 66 N. H. 482; *Story* v. *Railroad*, 70 N. H. 364, 368; *Olney* v. *Railroad*, 71 N. H. 427, 430); while in *McLaine* v. *Company*, *supra*, the master was held not liable for the negligent performance of a duty properly that of a servant, although the negligence in fact was the negligence of the foreman in charge of the work.

At the time of the injury Rombeau was directing the operation of the crane. The operation of the crane was a part of his employment. The sole question presented by this branch of the case therefore is, whether the operation of the crane was work which might be committed to a servant; or whether its safe operation was a non-delegable duty of the master, owed by him to the plaintiff, of which he could not divest himself by employing another to perform it for him. There is no claim of any defect in the machine itself, or of incompetency in the engineer or Rombeau. The claim is as to the manner of operation, by competent persons, of a suitable machine used for the purpose for which it was designed. It is elementary that the master's duty does not extend to the operation of suitable machinery furnished by him to his servants. *Fournier* v. *Company*, 70 N. H. 629. "In working with a derrick, the foreman and his assistants are fellow-servants; and the master is not responsible to any one of them for the negligence of any other in the use of the materials and implements which the master has supplied." *McKinnon* v. *Norcross*, 148 Mass. 533, 537. In this case the loading of the stone into the car by means of the derrick was the common employment in which the parties were engaged. If Rombeau had himself handled the levers of the engine, it probably would not be suggested that the parties were not fellow-servants. But it is claimed that because Rombeau did not himself control the valves of the engine, but orally directed the engineer when to raise and lower by the crane, such directions constituted a part of the master's duty, because they were orders. If it is held that the servant acts as the representative of the master in giving the order in question, upon the ground of his rank and the extent of his control over others (the class of cases considered in the note to 51 L. R. A. 513, to which attention has been called at page 590), it necessarily follows that the negligent order in question is the act of the master. Similarly, under the doctrine of the cases by which the character of the act in question, as representative or otherwise, is determined by the nature of the act itself (note, 54 L. R. A. 33), if the order is given in the execution of any non-delegable duty

devolved by law upon the master, such order is the act of the master; while if the order is merely part of the performance of a delegable duty, the order is the act of a servant for which the master is not liable. As the latter rule is the law here, decisions in jurisdictions where the former point of view (called the superior servant rule) prevails, as in Illinois and Missouri (51 L. R. A. 539, 540, 608, 614, and cases there cited), are not of value here, but are liable to mislead. "None of the courts, apart from those which apply the superior servant doctrine, predicate non-assignability of the duty of giving orders" (note, 51 L. R. A. 593), a result which naturally follows from the reason upon which the opposite doctrine is founded. It is doubtless true, as said in *Hankins* v. *Railroad*, 142 N. Y. 416, 420, that "it frequently becomes very difficult to determine whether the particular act in any case is that of the master as such, or only that of a mere fellow-servant." But there is no difference in principle between a verbal act, an order, and any other act. The question is the same in either case, whether the act pertains to the duty of the master or the work of a servant. As the court continue in the case referred to (*Hankins* v. *Railroad*): "It is not a question as to the rank of the individual who gives the order or performs the act. The question is one as to the character of the order or act, whether it is one which is given or performed as an order or act of the master in his character as such, or only as an order or act delegated by the master to another and performed by such other as an employee." Hence it is generally held that negligence of a superior servant, even in giving orders whereby injury results, is not of itself sufficient to charge the master. *Moody* v. *Company*, 159 Mass. 70; *Alaska Mining Co.* v. *Whelan*, 168 U. S. 86.

*Griffin* v. *Company*, 67 N. H. 287, was a suit for injury resulting from the operation of a steam crane or derrick. In that case it appeared that when the load was ready to be raised the men arranging the load gave the signal to the engineer to hoist. At the time of the accident the plaintiff himself gave the signal. At this moment the defendants' superintendent called out to the engineer in a loud voice to hoist, whereupon the engineer started the engine quickly and injured the plaintiff. Whether the case disclosed evidence in the sudden interference and direction of the superintendent tending to establish that the order so given was an exercise of the controlling authority of the master, and if so, was the performance of a duty of the master, was not decided, because the fact that the injury was caused, not by negligence in the order, but by negligence in obeying it, rendered immaterial the question whether the order given was the master's act. Neither are the questions suggested now presented for decision.

The order in question was not an interference with the conduct of the work of servants, by virtue of a general power of superintendence and control conferred upon Rombeau by the master. Neither was it given in the performance of any of the master's duties. It was a part of the work of operating a machine; a work which, upon all the authorities, may be delegated to a servant, and which in this case was specially imposed upon Rombeau. It is obvious that the operation of a steam crane or derrick will often, if not generally, require that some person in a position to observe the work should direct by signals or verbal orders the engineer in the control of the engine. Such person operates the machine as truly as the workman operates the axe or shovel in his hand. There is no logical ground which would require the master personally to operate the machine, which would not impose the same duty as to the tool. The legal principle by which the master's liability is determined in this case is the same as if the parties were loading stone upon a drag with crowbars. *Fifield* v. *Railroad*, 42 N. H. 225, 228. If the careless handling of the bar raised the stone to the injury of one of the workmen, it would not be claimed that a right of action accrued against the common employer, even if the one handling the bar were in general charge of the work. In this case Rombeau raised the stone by a steam crane which was controlled by the engineer under Rombeau's directions. The raising of the stone through Rombeau's directions to the engineer was as much Rombeau's act as if it had been done by a bar in his hand. The movement injurious to the plaintiff was not made the act of the master because it resulted from the oral instruction of Rombeau to the engineer, and took effect through the engineer's intelligent obedience, rather than from the unintelligent obedience of the crowbar following his will silently exerted by the pressure of his arm and weight. The giving of such direction was a necessary part of the removal of each stone; and there is nothing tending to show that such operation of the crane was not the work of a servant, imposed upon Rombeau as a servant, whatever relation he might occupy as to duties imposed on the master by law. For the negligence of one in general charge of the work while performing the duty of a servant, the master is not liable to other servants engaged in the common employment. The test is, as before stated, whether the act complained of is an act which may be performed by a servant, or is one which the master is personally bound to perform and therefore cannot delegate. It is obvious that hoisting the stone was no more the personal act of the master than the attachment of the chain. *McLaine* v. *Company*, 71 N. H. 294, is decisive of the questions raised in this case.

*Exception overruled.*

CHASE, WALKER, and BINGHAM, JJ., concurred.

REMICK, J., *dissenting.* The plaintiff was the defendant's servant, and his duty was "to dig around rocks that were to be taken out and to attach chains thereto, so that they could be hoisted by a steam crane." The crane was "operated" by an engineer, a fellow-servant with the plaintiff. The defendant was represented by one Rombeau, who had general direction of the men, "charge" of the operation of the crane, and of everything connected with the work. The plaintiff complained to Rombeau that the chain furnished him was too large and awkward, that he could not get it around the stone very well, and asked Rombeau to get him a smaller and handier one. Rombeau attempted to find such a chain, but was unable to do so, and told the plaintiff he must get along with the one he had. The plaintiff then adjusted the chain; but the chain being a little slack, the stone began to swing when it was hoisted by the crane, and Rombeau gave instruction to the engineer to lower the stone in order to stop the swinging. The plaintiff then told Rombeau that the chain was not right on the stone, that it was not safe, and asked Rombeau to wait until he fixed it. The plaintiff took hold of the chain, but Rombeau immediately remarked to the engineer, "Go ahead; the chain is all right." The engineer raised the stone; and in doing this, the chain caught the plaintiff's hand and injured it. Upon these facts, I think the plaintiff was entitled to go to the jury, and that the nonsuit was improperly ordered. The plaintiff was making the best of an unsuitable chain which he had complained of to Rombeau, and which Rombeau, after seeking for another, had told him he must get along with. Proceeding accordingly, and discovering that he had not got the chain right on the stone,—that it was not safe,—the plaintiff did what it was his duty to do, warned Rombeau of the danger, asked him to wait until he fixed the chain, and proceeded to fix it. Regardless of the plaintiff's notice that the chain was not safely adjusted, and regardless of the fact that the plaintiff was proceeding to fix it and had taken hold of the chain for that purpose, Rombeau, speaking with the master's authority, ordered the engineer to go ahead, and the plaintiff was injured in consequence.

I will take no time in considering the question of the defendant's liability growing out of the character of the chain furnished, because it does not satisfactorily appear, as the record shows, that any defect in the chain contributed to the injury.

As to the defendant's liability as affected by the negligence of Rombeau, it has been suggested that the record discloses no evidence that Rombeau knew or ought to have known that his order to hoist the crane would be attended with danger to the plaintiff. But it appears that he had just been told by the plaintiff that the

chain was not safely adjusted, and asked to wait until the plaintiff could fix it. It being the plaintiff's duty to make proper adjustment of the chain, he had a right to assume, after notifying Rombeau that it was not safe and asking him to wait until he fixed it, that Rombeau would wait. And Rombeau, in the exercise of ordinary care, might have anticipated after such notice and warning that the plaintiff would proceed to fix the chain according to his duty, and that he would be imperiled if the chain was hoisted in disregard of his warning and request. That there was evidence for the jury of due care on the part of the plaintiff and of negligence on the part of Rombeau, in this connection, seems too clear for discussion.

As the case presents itself to my mind, the only question worthy of serious consideration is whether, assuming due care on the part of the plaintiff and negligence causing the injury on the part of Rombeau, the defendant is liable. The majority are of the opinion that the defendant is not liable, and upon the theory that the negligence of Rombeau was the negligence of a fellow-servant. From this conclusion I am constrained to dissent.

The plaintiff's injury resulted immediately and solely from Rombeau's order to the engineer to hoist the stone, in defiance of the plaintiff's warning that it was not then safe to do so, and while the plaintiff, as Rombeau knew or ought to have known, was endeavoring to make it safe. The order, under the circumstances, was obviously improper and negligent. As the plaintiff was injured in consequence, I see no reason in law, morals, or philosophy why the defendant master should not be held responsible. I do not contend, because the master had committed the superintendence of the men and works to Rombeau, that he became responsible for Rombeau's negligent performance of acts of common labor or fellow-service; but to say that an order, by one authorized by the master to give it, to others required by the master to obey, is an act of fellow-service, is to say what is manifestly not so, in disregard of elementary principles of agency and the dictates of reason and justice. This court turned away from such a proposition in *Griffin* v. *Company*, 67 N. H. 287, 289, and it cannot be reconciled with views expressed in *Jaques* v. *Company*, 66 N. H. 482, *Lintott* v. *Company*, 69 N. H. 628, 632, and *Lapelle* v. *Company*, 71 N. H. 346, 349. If it finds any countenance in *McLaine* v. *Company*, 71 N. H. 294, I have only to say that the doctrine in that case did not have my approval, and I cannot assent to its application to the new and different situation presented here. In *McLaine* v. *Company*, the injury was caused by negligent omission on the part of the foreman to warn in accordance with his duty, assurance, and custom, and as required in

order to make the working-place safe. In the present case the injury was caused by a negligent order, given by the defendant's representative in charge, in defiance of the plaintiff's warning that the situation was not safe and that the order should be deferred. In *McLaine* v. *Company*, I was unable to see how the duty of the master to warn, when established, as it admittedly was in that case, could be discharged by delegation, any more than any other duty incumbent upon the master (*Jaques* v. *Company*, 66 N. H. 482; *Olney* v. *Railroad*, 71 N. H. 427, 430); any more, for instance, than the duty to warn in *Simone* v. *Kirk*, 173 N. Y. 7, *Wheeler* v. *Company*, 135 Mass. 294, and *Bjbjian* v. *Company*, 164 Mass. 214, 220, or the duty to instruct in *Lapelle* v. *Company*, 71 N. H. 346, 349, and *Tedford* v. *Company*, 134 Cal. 76,—54 L. R. A. 85, and note, 96, 97, 98. So in the present case I am unable to see why an authorized order, given by one servant of the master to another, directing the latter to work in a particular place, is the act of the master (*Lapelle* v. *Company*, 71 N. H. 346, 349; *Lintott* v. *Company*, 69 N. H. 628, 632), any more than an authorized order by the same servant directing the progress of the work in that place.

It may be a question, under some circumstances, whether an alleged order was an order, or simply an act of fellow-service. But when the circumstances show that the alleged order was an act of authority, and that obedience thereto was a duty, then the order, whatever the grade of the giver or the nature of the order, must, if the reason and consistency of the law are to be preserved, be regarded as the order of the master.

Rombeau was the defendant's representative in command. The men and works were all subject to his direction. He did not operate, but had charge of the operation of the crane. The order in question was not a signal given by Rombeau in the ordinary course of the work and involving no exercise of authority. The circumstances were special. The plaintiff had told him that the chain was not safe, and had asked him to wait until he fixed it. Under these circumstances, Rombeau's order to the engineer to go ahead can be regarded in no other reasonable light than as an act of authority. It ignored the plaintiff's warning and left the engineer no alternative but disobedience. But for its official character, it might have spent itself in impotency. As it was, it set in operation the forces which caused the plaintiff's injury. If not an order, in the sense of being an exercise of authority, it would be difficult to conceive when an order would be of that character. To say that it was a mere act of fellow-service, would, under the circumstances, be a manifest misnomer. However other situations might be viewed, the proper classification of the present

case would seem clear. It is the case of a negligent order, by one speaking with the authority of the master; nothing more, nothing less. That the master is liable under such circumstances, is a proposition sound in principle and abundantly supported by authority.

In *Crispin* v. *Babbitt*, 81 N. Y. 516, 530, the leading case to the proposition, now so generally accepted, that the nature of the act, not the rank of the actor, is the test of the master's liability, it appears from the dissenting opinion to have been generally assumed that an order by one authorized by the master to direct would be the master's act. And it was recently declared, upon a careful review of the authorities, that, "under any consistent application of the New York rule, . . . the master is represented, as by a vice-principal, by any one to whom he deputes the power of giving orders which must be obeyed without or before appeal; and he is responsible for those orders as much as if they were his own." Shearm. & Red. Neg. (5th ed.), s. 233.

In *Dayharsh* v. *Railroad*, 103 Mo. 570, cited by this court in *Jaques* v. *Company*, 66 N. H. 482, 485, to the proposition that "those doing the work of a servant are fellow-servants, whatever their grade of service, and a servant of whatever rank, charged with the performance of the master's duty toward his servants, is, as to the discharge of that duty, a vice-principal, for whose acts and neglects the master is responsible," it was said: "It was undoubtedly within the scope of Mr. Stephens' authority as . . . 'boss,' to direct where the engine and tender that struck plaintiff should be placed, and how and when they should be moved over the tracks. In giving directions to that end and seeing to their execution, we think he was performing the master's part, and as such was the representative of the latter and not a mere fellow-servant of the plaintiff." See, also, *Foster* v. *Railway*, 115 Mo. 165, 179, 180.

In *Chicago etc. R. R.* v. *May*, 108 Ill. 288,—15 Am. & Eng. R. R. Cas. 320, 323, 324, the true principle is well enunciated as follows: "The mere fact, that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, has power to control and direct the actions of the others with respect to such employment, will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this

respect, must depend on its own circumstances. If the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a co-laborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable. For instance, if the section boss of a railway company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, causing his death, the company would not be liable; but when the negligent act complained of arises out of or is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable. In such case he is not the fellow-servant of those under his charge, with respect to the exercise of such power; for no one but himself, in the case supposed, is clothed with authority to command the others. When a railway company confers authority upon one of its employees to take charge and control of a gang of men in carrying on some particular branch of its business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of its business, is the direct representative of the company itself; and all commands given by him within the scope of his authority are, in law, the commands of the company. . . . In exercising this power he does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey, at the peril of losing their situations; and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences."

This rule was recently applied in the same jurisdiction, in *Illinois etc. R. R.* v. *Atwell*, 198 Ill. 200, where the court said: "It is insisted that the negligence charged is the negligence of a fellow-servant, and therefore plaintiff could not recover. While the foreman and Atwell may have been in many respects fellow-servants, they were not in that relation as to the exercise of authority by one over the other. The injury resulted from the improper exercise of the foreman's power to command, and in respect to the exercise of such power they were not fellow servants."

In *Taylor* v. *Railroad*, 121 Ind. 124,—16 Am. St. Rep. 372, 374, 376, it is said: "It is not easy to conceive how it can be justly asserted that one who commands an act to be done and who possesses the authority to command, . . . by virtue of the power delegated to him by the master, is no more than a fellow-

servant. . . . The duty of the master-mechanic, as it appears from the complaint, was to order what should be done; and this, it has been well decided, is intrinsically the master's act, and not that of a mere fellow-servant."

In *Carlson* v. *Company*, 63 Minn. 428, it was said: "The doctrine of 'fellow-servant,' and particularly that phase of it presented by this case, to wit, when a superior employee bears to inferior employees under him the relation of vice-principal and when that of fellow-servant, is one of the most difficult questions in the law. The principle which this court has always announced as the test is, that it is not the mere rank or grade of the superior employee, but the nature of the duty or service which he was performing, which determines the question; that whenever a master delegates to another the performance of a duty which he owes absolutely to his servants, or which would fall within the line of his duty as master if personally present, then, in the performance of such acts, such other person would be, as to other servants, a vice-principal and not a fellow-servant. . . . For example, in hiring and discharging workmen the foreman in the present case would represent the master, and his negligence in the premises would be chargeable to the master. So also in the matter of selecting or inspecting implements and other instrumentalities for the performance of the work, assuming that this duty had been delegated to him. And where, as in this case, he had been given entire control of the work and all the workmen engaged in it, with . . . authority to give them orders how to do the work and where to work, I think that, on exactly the same principle, in giving these orders, which the workmen were bound to obey, he represented the master, and was performing a duty which would have devolved upon the master if personally present."

The subject was recently considered and the authorities reviewed, in an exhaustive note in 51 L. R. A. 513, 590, and the conclusion arrived at is thus stated on page 590 : "There is an overwhelming weight of authority to sustain the doctrine that the liability to which the master is declared to be subject, wherever the negligent act is a direct result of the exercise of power conferred by the master, in the performance of a duty devolving by law upon him, is predicable in the case of orders issued in respect to the work, whatever may be the precise object to which those orders may have relation. It is, in fact, difficult to see what more indisputable example there can be of an 'exercise of authority' than the giving of such orders; and for the purposes of the master's liability in this instance, it is obviously quite immaterial whether the delinquent employee be a mere 'superior servant,' or a general or departmental manager. According to the great majority of the

cases, therefore, all that is necessary to fix liability upon the master is that the negligent order which caused the injury should be proved to be incident to the performance of the duties of his position." See, also, Shearm. & Red. Neg. (5th ed.), s. 233; *Galveston etc. R'y* v. *Puente* (Tex.), 70 S. W. Rep. 362.

Decisions of the supreme court of the United States have been cited in behalf of the defendant, but the latest judicial utterance from a federal source is quite in harmony with the principle for which I am contending. See *Chicago etc. Co.* v. *Birney*, 117 Fed. Rep. 72, where it is said by the court of appeals, 8th circuit: "It is . . . noteworthy that in the present instance the plaintiff was not injured by the negligent act of Bennett after he had descended to the plane of an ordinary laborer, and while he was assisting the plaintiff in doing the ordinary work of a laborer. He was injured in consequence of a negligent order given by Bennett, in the giving of which Bennett was obviously exercising the functions of the master." See, also, *Northern etc. R. R.* v. *Egeland*, 163 U. S. 93.

It will be observed that the authorities to which attention has been called do not proceed upon the superior servant idea, but upon the theory adopted in this jurisdiction: that the character of the act, and not the rank of the actor, is the test. They hold the master liable for the consequences of a negligent order given by his authorized representative, not because of the rank of the person from whom it emanates, but because of the intrinsic character of the act; because it is an order as distinguished from common labor—an act of authority as distinguished from fellow-service. The suggestion of the majority, that decisions proceeding upon the superior servant theory are without value and misleading, is, therefore, pointless as applied to the present discussion.

The fact, that in jurisdictions where judicial opinion has gone the extreme length of the opinion of the court in the present case, legislative action has been found necessary to restore the law to a basis in better accord with the principles of agency governing other relations and more in harmony with abstract justice (42 & 43 Vict., c. 42; Mass. Acts & Resolves 1887, c. 270; *Feltham* v. *England*, L. R. 2 Q. B. 33; *Moody* v. *Company*, 159 Mass. 70, 72, 73; *Roche* v. *Bleachery*, 181 Mass. 480), does not weaken our conclusions. On the contrary, the revulsion, thus indicated, from the doctrine against which we are contending, is additional proof of its injustice. In matters where the courts are free to apply the law of reason, they should not await legislative action.