## STANDARD POTTERY COMPANY v. MOUDY.

[No. 4,887.   Filed January 25, 1905.   Motion to modify mandate denied
March 29, 1905.   Transfer denied May 12, 1905.]

1.  PLEADING.—*Complaint.*—*Master and Servant.*—*Negligence.*—*Defective Appliances.*—A complaint, alleging that defendant's foreman ordered plaintiff to assist in doing certain work outside of the scope of his employment, and that the master knowingly furnished defective and dangerous appliances for the performance of such work; that plaintiff did not know of such defects and dangers and could not ascertain the same by the exercise of reasonable care, and that by reason of such defective appliances plaintiff was injured, states a cause of action.   p. 428.

2.  TRIAL.—*Interrogatories to Jury.*—*Master and Servant.*—*Defective Appliances.*—*Negligence.*—Where the answers to interrogatories, in an action by a servant against the master for damages for personal injuries, show that the defects complained of did not exist; that the dangers of using the appliances were as obvious to the servant as to the master; that the servant had worked therewith many times before; that such appliances were in general and common use, and were reasonably safe; and that the servant was experienced in the use thereof, such answers preclude recovery by the plaintiff on account of the negligence charged.   p. 432.

3.  NEGLIGENCE.—*Defective Appliances.*—*Test.*—Where an accident is unusual and not reasonably to be anticipated by past experience with the appliances in question, there is no culpable negligence.   p. 435.

4.  MASTER AND SERVANT.—*Negligence of Fellow Servant.*—*Liability.*—The master is not ordinarily liable for the negligence of a fellow servant.   p. 435.

5.  SAME.—*Fellow Servants.*—*Who Are.*—A foreman, while assisting other servants in doing a specific work, is a fellow servant with those whom he is assisting.   p. 437.

6.  APPEAL AND ERROR.—*Interrogatories.*—*Answers.*—*When New Trial Ordered.*—Where defendant is, by the answers to the interrogatories to the jury, entitled to judgment thereon, the Appellate Court will, when the ends of justice will be best subserved, order a new trial. Wiley, J., dissents.   p. 437.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Corwin E. Moudy against the Standard Pottery Company.   From a judgment on a verdict for plaintiff

for $2,000, defendant appeals.   (On petition to transfer to Supreme Court.   *Denied.*   164 Ind. 656.)   *Reversed.*

*Elmer E. Stevenson* and *Edward H. Knight,* for appellant.

*Coffey & McGregor,* for appellee.

Comstock, C. J.—Appellee brought this action against appellant to recover damages for injuries received on June 21, 1901, as a result of appellant's alleged negligence.

Appellee was first employed by the Standard Pottery Company, appellant herein, in May, 1900, to perform general work about the factory; subsequently, about six months prior to his injury, he was assigned to work in glazing clay ware, and about five months prior to his injury was assigned to a jigger wheel, a machine used for turning out jars and other clay ware.   The complaint is in two paragraphs. The defendant demurred to each for want of facts sufficient to constitute a cause of action.   The demurrers were overruled, and the cause put at issue by general denial.   A trial resulted in a verdict and judgment for plaintiff in the sum of $2,000.   With the verdict, answers to interrogatories were returned.

.1.   The errors assigned challenge the sufficiency of each paragraph of complaint, the action of the court in overruling appellant's motion for judgment on the answers to interrogatories, and in overruling appellant's motion for a new trial.

The first paragraph avers that the defendant was a corporation duly organized under the laws of the State of Indiana, and on the 21st day of June, 1901, owned and operated a manufacturing plant wherein certain pottery jars and other clay products were manufactured; that plaintiff was then in the employ of said defendant, working in said establishment in the capacity of a jollyman or jigger, whose duty it was to operate a piece of machinery in the manufacturing of milk crocks and other clay products; that he was employed for no other or different purpose, and was by said de-

fendant assigned to said position, and said position was non-hazardous; that on said day Charles Carlyle, who was the foreman and superintendent of said establishment, directed plaintiff to quit his said employment where he was then engaged, and to assist another employe of said defendant in drawing together and adjusting a large belt which was being operated upon other machinery in said establishment, and which had prior thereto been broken; that said work of repairing said belt, and adjusting the same as he was directed to do, formed no part of plaintiff's duties under his employment, but was independent thereof, and that said work of repairing said belt, together with the appliances to be used, was a hazardous and dangerous employment; that, in obedience to the direction of said foreman, plaintiff undertook to assist in uniting the broken ends of said belt; that it was the duty of the defendant to furnish reasonably safe and suitable tools and appliances with which to perform such work; that it neglected and failed to perform said duty in this, that it negligently furnished for such purpose defective and improper implements and appliances; that the mode adopted by defendant for drawing the ends of the broken belt together was by means of certain blocks or pieces of timber about six inches in thickness and about four inches in width and two feet in length; that one piece of timber was placed under the lower side of one end of the belt and the other piece was placed on top of the other side, and said pieces of timber were then securely fastened together, with the belt between, by means of iron bolts passing through both pieces of timber at either end, and upon the ends of the bolts were adjusted iron burrs or nuts, which by means of a wrench were tightened, thereby causing said timbers to fasten upon and clamp the portion of the belt between said timbers; that a block similarly constructed was in like manner placed upon and adjusted to the other end of the broken belt; that upon either side of the belt extended iron rods about three feet in length and about one inch in diameter,

and passing through the ends of said blocks of timber and having attached at the ends of the rods iron burrs and nuts; that, by means of a wrench being applied to said rods and causing them to turn, the rods would pass into said burrs or nuts at the ends adjusted as aforesaid, thereby shortening the rods and drawing the blocks with the ends of the belt clamped as aforesaid closer together, and by this process the ends of the belt were brought together so as to be held in position until the ends were united by lacing; that said appliances were adjusted to said broken belt, as above set out, by plaintiff and John Ross, a co-employe, under the direction of said Carlyle as aforesaid; that after they were so adjusted said Ross proceeded to tighten the rod on one side of the belt, and plaintiff on the other; that while so engaged in tightening the rod and drawing said ends of the belt together, as directed by said Carlyle, suddenly and without any warning the blocks, being upon a very great strain, let loose of said belt and flew forward with great force, striking plaintiff upon his arm, seriously and permanently disabling him; that said injury was due solely (1) to the negligence and carelessness of the defendant in taking him from his regular line of employment, (2) to defendant's negligence in directing him to perform said work, and (3) to carelessness of the defendant in not providing suitable and proper blocks and appliances for the performance of such work; that the same were defective in construction, and were not of an approved pattern in this, that they were made of plain surfaced timber, so that the parts which came in contact with and were intended to clamp the belt were smooth, having no grooves therein or other means provided by which to cause said blocks to seize upon and hold the belt from slipping through the blocks which should have been provided; that said apparatus had been in use in and about said establishment for more than three years, and had often been used, and by reason thereof was worn very smooth on the face of the block which was applied to the belt, and on

account of the worn and smooth condition of the blocks they could not be fastened upon the belt so as to prevent their slipping when applying force sufficient to bring the broken ends of the belt together; that said appliance was old, worn smooth, was defective in material and construction, and was wholly unfit to be used for the purpose for which it was intended, all of which facts were well known to the defendant, or might have been known by the exercise of reasonable diligence and inspection; that said defendant, with said knowledge as to the unworthy condition of said blocks and appliances as aforesaid, had carelessly and negligently permitted the same to be used without warning plaintiff of their defective condition or of the danger attending their use, and carelessly failed to provide any means to prevent the same from slipping when in use, as it could and should have done for the safety of its employes.

It further avers that plaintiff was inexperienced in the use of such appliances, and had no knowledge as to the proper mode of constructing the same so as to render them efficient and safe; that he had no knowledge of the imperfect construction of said blocks, nor of their defective condition, nor of the danger attending their use in such condition, but, presuming that they were safe to be used, and knowing nothing to the contrary, he proceeded, in the exercise of due care, to carry out the instructions of said foreman, when he was injured as aforesaid, without any fault or negligence on his part contributing thereto.

The second paragraph differs in the following particulars: That defendant's negligence consisted in providing implements wholly unsuited and unfit to be used, and in assigning plaintiff to a place made unsafe by reason of those defective appliances, and in failing to adjust the defective clamps or guard against slipping in their defective condition, and in negligently ordering plaintiff to perform the act which resulted in his injury; that Carlyle, the foreman, negligently directed plaintiff and one Ross, a co-employe, to use those

defective appliances, and to stand between the blocks and tighten the rod by the use of a wrench, instead of standing at the end and tightening the nuts on the rod, and "negligently directed plaintiff still further to tighten said rod when the same was on a very great strain;" that plaintiff, having no knowledge of the mode of using clamps, "relied upon the directions of said Carlyle, whose orders he was bound to obey"; that, while in his effort to carry out said Carlyle's order still further to tighten the rod, the clamp slipped and struck plaintiff on his arm. The court did not err in holding each paragraph good.

The charge of negligence in each paragraph is based upon defendant's failure to furnish clamps reasonably safe and fit for the purpose for which they were to be used. This is the essential element in the case. Such failure is a breach of legal duty. Every act charged rests upon the defendant's negligence in furnishing defective and unsafe implements to use in lacing the broken belt.

2. With reference to the averments of the complaint, the answers to interrogatories show, among others, the following facts: Plaintiff had assisted ten or twelve times in repairing belts by the use of clamps. On several occasions he had used the same clamps that he was using at the time of his injury. Carlyle and Ross usually assisted plaintiff in said work, and he was assisted by them at the time he was injured. At that time said Carlyle, Ross and plaintiff were each doing a part of the necessary work in bringing together the broken belt, and were all engaged in the common work of repairing the belt, each one of them doing a share of the work at the time of the accident. Carlyle and plaintiff had on prior occasions worked together in placing clamps on belts, and in tightening the belt by the use of clamps, and in lacing belts.

It is also found that the bolts, nuts and threads were in good condition and repair at the time of the accident. After the accident plaintiff assisted Carlyle and Ross in

readjusting the clamps to the belt and making the necessary repairs in the belt. Plaintiff tightened the same end of the clamps on the belt that he had just tightened before the belt slipped from the clamps, and the clamp then held the belt securely. No repairs whatever have been made to these clamps or the bolts or nuts, or anything else pertaining to them, since the accident, and up to the present time they have been used whenever necessary to repair belts. They were of a pattern in common use for repairing belts, and when securely tightened there was no rubbing or friction on the face of them.

It is found that it was customary for as long as ten or fifteen years for clamps of this character to be used in repairing belts. It was the duty of plaintiff and Ross to tighten the clamps on the belt before it was laced, when so ordered by the foreman. They knew it was their duty to fasten the clamps securely, according to the orders of the foreman. The surfaces of these clamps which went to the belt were in good condition and repair; and nothing pertaining to the clamp or bolts broke so as to cause the clamp to slip. Before adjusting the clamps plaintiff examined their inner surfaces. He had used these clamps about a dozen times, and had seen the condition of their surfaces between which the belt was placed. Carlyle did not direct plaintiff where to stand in tightening the clamps. Plaintiff had been employed in defendant's factory eighteen months prior to the accident.

When plaintiff took his job he knew he was subject to the foreman's orders. Plaintiff's eyesight was good at the time of the accident, and there was ample light at the time and place of the injury. The clamps used were about twenty inches in length, and four and three-fourths inches by two and three-fourths inches in width and thickness. Smooth-faced clamps, if properly adjusted and tightened on a twelve-inch rubber belt, under the same tension as was the

belt at the time of the accident, would hold it securely without the use of nails, sandpaper or corrugations in the clamps, if proper precaution be taken.    After the accident to Moudy he fastened these smooth-faced clamps on his side of the belt, so that they held it securely without slipping until the repairs had been completed.    The belt slipped in the clamps · because proper precaution had not been taken by the foreman, Carlyle.    The clamps used by the plaintiff were such as were at that time in common use and approved by reputable companies in that vicinity having occasion to use clamps to repair belts of a character similar to that which Moudy was repairing.

Plaintiff had done similar work to that in which he was engaged when injured at least ten or twelve times.    The work he was doing when injured was done by him in the same manner in which he had done the work on prior occasions.    Moudy and Ross adjusted the clamps on the belt that slipped and struck Moudy's arm. The defendant had found from years of experience that it was safe to use, in lacing rubber belts of the kind plaintiff was repairing, clamps like those plaintiff was using.    Plaintiff never objected to assisting in repairing the belt or being where he was when injured.    He never objected to using the clamps which he was using when injured, nor to standing where he said he was told by Carlyle to stand.    The clamps which the plaintiff was using had been used with safety for several months by defendant's employes in lacing the belt which the plaintiff was repairing.    Before the injury plaintiff never said to defendant that he was ignorant or inexperienced in using clamps to repair belts.

These answers conclusively show a failure to prove the acts of negligence charged.    The plaintiff is found to have been a man of experience, to have undertaken to work with appliances the condition of which and circumstances surrounding which were open and obvious to him, and to do

that which he had done by the same means and in the same manner ten or twelve times before.

The appliances which in the complaint are alleged to have been defective and unfit are found to be suitable and in good condition; to be of a pattern in common and approved use not only in appellant's factory, but in other establishments of like character; to have been used with safety by appellant for years before the accident. The work was being done in the customary manner by competent servants. There is no charge, nor do the findings show, that Carlyle and Ross were not competent.

3. Where an accident is unusual and not reasonably to be anticipated in the light of experience from the appliances used, there is no culpable negligence. *Wabash R. Co.* v. *Locke* (1887), 112 Ind. 404, 2 Am. St. 193; *Standard Oil Co.* v. *Helmick* (1897), 148 Ind. 457; *Consolidated Stone Co.* v. *Redmon* (1899), 23 Ind. App. 319.

4. The employer is not liable to an employe when the injury is due solely to the negligence of a fellow servant. The employer discharges his duty when he furnishes a reasonably safe place in which the employe is to work, suitable and reasonably safe appliances, and reasonably skilful and competent fellow servants. Having done so he does not become an insurer of the safety of the employe. The proper use of appliances is the duty of the employe. 12 Am. and Eng. Ency. Law (2d ed.), 953, 954, and cases cited; *Hoosier Stone Co.* v. *McCain* (1892), 133 Ind. 231; *Drinkout* v. *Eagle Machine Co.* (1883), 90 Ind. 423; *McKinnon* v. *Norcross* (1889), 148 Mass. 533, 20 N. E. 183, 3 L. R. A. 320; *Hussey* v. *Coger* (1889), 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. 787; *Kerner* v. *Baltimore, etc., R. Co.* (1897), 149 Ind. 21.

In the last case cited the court said: "It can not be that the master, when he has supplied a safe place to work, has furnished tools and appliances free from fault, and when he

has not been careless in the employment of unskilful servants, is required also to have present, as each act of each servant is performed, some one to warn the servant against the improper use of the appliances furnished." In that case appellant's decedent and other employes were repairing a locomotive, under the foreman's direction, and the foreman was held to be a fellow servant of decedent in doing that particular work, and the master was not liable for such foreman's negligent acts of omission.

In *Klochinski* v. *Shores Lumber Co.* (1896), 93 Wis. 417, 425, 67 N. W. 934, the court said: "Whatever order or direction Murray [the superintendent] gave to the plaintiff after he commenced the work on the log deck, and while working there with Murray, must be regarded as the order or direction of a co-employe or fellow servant and not of the vice-principal of the defendant."

In *McKinnon* v. *Norcross, supra,* the court said: "Properly to use pulleys, blocks, ropes, and other ordinary tools and appliances which have been furnished by a master to a workman employed upon a derrick, is a part of the duty of the workmen. It is incidental to the management and use of the derrick. In working with a derrick, the foreman and his assistants are fellow servants, and the master is not responsible to any one of them for the negligence of any other in the use of the materials and implements which the master has supplied." See, also, *Southern Ind. R. Co.* v. *Marlin* (1903), 160 Ind. 280; *O'Brien* v. *American Dredging Co.* (1891), 53 N. J. L. 291, 21 Atl. 324.

It is vain, in the face of the facts found, to say that appellee was inexperienced in the work or ignorant of the danger, or that the appliances were defective or out of repair. To several of the answers to interrogatories set out the jury have added "if proper precaution be taken." What was meant thereby we can not positively know. That proper appliances were furnished, that they were used in the cus-

tomary manner, and used by competent servants clearly appears.

5. Carlyle and Ross were fellow servants with appellee in the particular employment described, notwithstanding Carlyle's general control as foreman. *Justice* v. *Pennsylvania Co.* (1892), 130 Ind. 321.

The reasonable inference to be drawn from the use of the expression "if proper precaution be taken" would seem to be that the unfortunate accident was due solely to the failure upon the part of either the appellee or his co-workers securely to fasten the clamps, and that this was the only "proper precaution" meant. Still this is matter of conjecture. The answers to interrogatories are in irreconcilable conflict with the general verdict upon the negligence charged.

6. There are numerous alleged errors discussed which have not been referred to in this opinion, for the reason that the questions thereby presented may not arise upon a second trial. The condition annexed to the answers to some of the interrogatories hereinbefore referred to leaves a possible doubt as to the meaning intended, and, upon a consideration of the whole record, we are of the opinion that the proper course to pursue is to reverse the judgment, with instructions to sustain appellant's motion for a new trial.

Judgment reversed.

WILEY, J.—I concur in the conclusion that the judgment should be reversed, but under the answers to interrogatories I am firmly of the opinion that they show appellee to have been guilty of contributory negligence, which should preclude his recovery. In such case the answers are in irreconcilable conflict with the general verdict, which finds that appellee was free from fault, and hence control the general verdict. The appellant was entitled to judgment, and the mandate should direct the trial court to sustain its motion therefor.