# Perdue *v.* Louisville & Nashville Railroad Company.

100  535
e132  526

### *Action for Injuries to Employe Resulting in Death.*

1. *Demurrer to complaint for personal injury to employe.*—A complaint for personal injuries to plaintiff's intestate resulting in his death, which alleges in one count that the injury was caused by the want of a sufficient number of brakemen or employes to manage the train, and in another count the negligence alleged is that of the engineer in the reckless running of the train down grade, is not demurrable on the ground that it shows plaintiff's intestate was an employe.

2. *Evidence of want of opportunity to repair defective machinery after discovery of defect.*—In an action against a railroad company for the death of a brakeman, where the conductor testifies that he was informed by decedent before the accident that the brakes were out of repair, he may testify on cross-examination that it was not his duty to repair brakes, and that they were at no place, after he received such information, and before the accident. where the brakes could have been repaired.

3. *Rapid running of train not negligence per se.*—It can not be said as matter of law that the running of a railroad train at any rate of speed, away from those places where the statute regulates it, is negligence *per se*; whether or not rapid running of the train, at points not regulated by statute, would be negligent would depend upon the conditions under which it might be maintained.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

This was an action brought by J. C. Perdue, as the administrator of W. S. Perdue, against the Louisville & Nashville Railroad Co. and sought to recover damages for the alleged negligent killing of the plaintiff's intestate. There was judgment for the defendant, and plaintiff appeals.

In the first count of the complaint, after alleging the employment of the plaintiff's intestate by the defendant in the operation of a freight train of cars, the plaintiff avers that the accident, which resulted in the death of his intestate, was caused by reason of the defect in the brakes, or one of the brakes on the cars of the defendant.

The second count of the complaint alleges the negligence to have been the want of a sufficient number of brakes to manage and control with safety the freight train.

The third count attributed the accident to the want of a sufficient number of brakemen or employes to manage and control the said train.

The negligence alleged in the 4th count of the complaint was that of the engineer, who was in the employ of the defendant at the time, and had charge of the engine attached to said train, in running said engine and train down a steep grade, "at a great, extraordinary and dangerous rate of speed, so as to cause said intestate to be thrown off of said cars and killed."

In the fifth count the negligence is alleged to have been that of the conductor, who was at the time in the employ of the defendant, and who had charge and control of the said train of cars, "in allowing said train of cars to be run down said grade of the defendant's said railway, . . at an extraordinary and dangerous rate of speed, so that plaintiff's intestate was thrown off said train of cars and killed."

To the second and third counts of the complaint the defendant demurred on the ground that there were no facts or circumstances shown, in said counts, connecting the alleged negligence with the injury.

To the fourth and fifth counts the defendant demurred on the ground that the complaint seeks to recover for the negligence of the engineer and the conductor, when the plaintiff's intestate was an employe of the defendant.

The demurrer to the fourth and fifth counts were sustained, and the plaintiff duly excepted.

Plaintiff's intestate was a brakeman in the employ of the defendant railway, running on a train between Flomaton and Montgomery, and on the morning of the 16th December, 1889, while the said train was coming in the direction of Montgomery, and when at or near a place known as Mudge's Tank, plaintiff's intestate fell from the top of the train which was in motion, and was killed. There were two other brakemen on the train at the time of the accident.

The testimony of one Oliver, who was the conductor of the train, shows, substantially, the following facts: That shortly after leaving Flomaton, a station south of the point where Perdue was killed, he directed Perdue to examine the brakes, who replied that several were out of order, and that but three or four of them would work. Witness then told Perdue to do the best he could, and govern himself accordingly and apply the brakes "more early;" that witness did not know how many brakes were out of order; that when the train was coming north, and was about one-half mile from Mudge's Tank, he heard the engineer blow the signal for brakes; that he looked out, and thought that at the time the train was going too fast to make a good stop at the tank, and looked to see who was not performing his duty; that

the witness could see the light of the middle brakeman (appellant's intestate), but could not recognize who it was. When first seen it was on the left side of the car going north, and did not move when the engineer blew his first signal for the brakes to be applied; that the engineer blew a second signal for brakes, and then witness saw the light of the middle brakeman go from the left side of the car to the center, pause a few moments and then move forward or in the direction from witness, and then witness saw the lantern go over to the left of the train and disappear about five car lengths from the caboose. The testimony further tended to show that the accident occured about 4.25 or 4.30 in the morning; that it was slightly cloudy and a light frost; that the train passed the tank and stopped a short distance beyond; that they went on to Garland and waited for the passenger train south, and then went back to see about Perdue ; that they found his body about forty feet from the railroad, and at about the place where the witness saw the light fall from the train, they found Perdue dead; that after they left Garland, witness went on top and examined the brakes ; found only four that would work. This witness also testified that at the time Perdue fell from said train it was running at the rate of about 25 or 30 miles an hour, and that this was not an unusual rate of speed for a freight train to run at the point where said Perdue was killed. Witness also testified that the road and track were in good condition at the point where plaintiff's intestate fell off of said train. Witness testified, in substance, that the number of brakes on said train, if applied in time, would stop the train at the tank, but would not do it if they were not applied until within about half a mile of said tank. Witness also testified that the car used runs smoothly and easily without brakes, and that it was no more liable to jump the track and jar when it had no brakes as when equipped with brakes.

The other witnesses introduced by the plaintiff testified that there were enough brakes on the train to have stopped it at the tank if they had been applied in time.

During the examination of the witness Oliver the plaintiff asked him the following questions: "How was the train loaded?" "Do you know whether the train was heavily or lightly loaded?" "How heavy was the train loaded?" The defendant separately objected to each of these questions, the court sustained each objection, and the plaintiff separately excepted to each ruling. During his further examination the defendant's counsel asked him the following question, against the objection and exception of the plaintiff:

"Was it any part of your duty to repair the brakes?" The witness answered, No. The defendant's counsel then asked him the following question: "Was there any place between Flomaton and Montgomery where you could put the car in to have the brakes repaired?" The plaintiff objected to this question, and duly excepted to the court's overruling his objection, and the plaintiff answered, there was not.

Upon the introduction of all the evidence, the court, at the request of the defendant, gave the general affirmative charge in its behalf. The plaintiff duly excepted to the giving of this charge, and also excepted to the court's refusal to give the general affirmative charge in his behalf.

GAMBLE & POWELL, for the appellant, cited *E. Tenn., Va. & Ga. R. R. Co. v. Deaver*, 79 Ala. 220; *L. & N. R. R. Co. v. Coulton*, 86 Ala. 129; *E. T., Va. & Ga. R. R. Co. v. Baker*, 94 Ala. 632; *Glass v. Mem. & C. R. R. Co.*, ib. 581; *Western R'y Co. v. Lazarus*, 88 Ala. 453.

CHARLES P. JONES, and J. B. JONES, for the appellee, cited *Western Railway of Ala. v. Sistrunk*, 85 Ala. 352; *N. C. & St. L. R. R. Co. v. Hembree*, ib. 485; *Lee v. Ga. Pac. R. R. Co.*, 92 Ala. 262; *Askew v. Mem. & C. R. R. Co.*, 90 Ala. 95; *Campbell ats. L. & N. R. R. Co.*, 97 Ala. 147.

HARALSON, J.—1. The second and third counts of the complaint, added by way of amendment, were demurred to, but no action appears to have been taken on the demurrers, and we must hold them to have been waived.

2. The fourth and fifth counts were demurred to, on the ground, as to each, that plaintiff's intestate was an employé of the defendant. The demurrers were sustained. There was no merit in that objection to these counts, and the demurrers to them should have been overruled.

3. There was no conflict in the evidence. The defendant did not examine a witness. It was shown there was a brake on the rear car; that while some of the brakes were out of order, there were several that were not; that there were four brakemen aboard, which was not shown to be less than the usual and necessary number; that the train consisted of sixteen cars, and was a freight train; was being run at a rate of 25 or 30 miles an hour,—not an unusual rate of speed for such a train at that point; that the road and track were good, and there was nothing to show that the things set up in the complaint as negligence, had any causal connection with the injury the intestate received, any more than

[Perdue v. Louisville & Nashville R. R. Co.]

the ordinary operation of such a train, at any time, would contribute to such a disaster— *Western R. R. Co. v. Mutch,* 97 Ala. 194.

The death of intestate, so far as is shown, was the result of one of those unfortunate accidents, (which may have been caused by his own inadvertence or want of care, of which there is some evidence) which are incident to the operation of a railroad train, for which no one can be blamed, and his liability to which, every brakeman is presumed to know, when he enters upon the discharge of such a service.

4. Enough has already been said, to make it appear, that the questions propounded by plaintiff to the witness, Oliver, as to whether the train was heavily or lightly loaded, were, taken in connection with all the other evidence, irrelevant, and properly disallowed. As a matter of law, we have frequently held, it can not be said that any rate of speed of a railroad train, away from those places where the statute regulates it, is negligence *per se.* Whether or not rapid running, at points not regulated by statute, would be negligence, would depend upon the conditions under which it might be maintained.—*E. T., V. & G. R. R. Co. v. Deavers,* 79 Ala. 217; *Western R. R. of Ala. v. Sistrunk,* 85 Ala. 352; *W. R. R. of Ala. v. Hembree, Ib.* 483.

5. Nor was there any error in allowing defendant to ask the witness, if it was any part of his business to repair brakes, and if there was any place between Flomaton and Montgomery, where he could put the car in, to have them repaired. This was rebuttal of what the witness had stated on his direct examination—that intestate had told him after leaving Flomaton, that some of the brakes in the train were out of order. It was competent to show by him, that it was not a part of his duty to repair brakes, and if it was his duty to repair them, or have it done, it was competent to show that he could not do it at that time. And, again, it does not appear that the condition of the brakes had any thing to do with the casualty.

This disposes of all the assignments of error necessary to be noticed, and the judgment, for the erroneous ruling of the court on the demurrers to the 4th and 5th counts of the complaint, must be reversed.

Reversed and remanded.