Decided 3 January, 1905.

## NORWICH INS. SOCIETY *v.* OREGON RAILROAD CO.

78 Pac. 1025.

Judicial Notice of Records of Voluntary Associations.

1. The custom of voluntary unincorporated associations to keep a record of their proceedings is so universal in the United States that the courts will take judicial notice thereof, and presume that such a record was kept; as, for example, of the proceedings of a meeting of the Master Mechanics' Association.

Parol Evidence to Prove Matters of Record.

2. Parol evidence is not competent to show matters of record without accounting for the absence of the writing. For instance, where it is sought to show that a railroad company uses on its engines the spark arrester recommended by the organization called the Master Mechanics' Association, the record of the proceedings concerning such adoption is the best evidence of what was done, and oral statements on the subject are prima facie inadmissible.

Harmless Error.

3. Error in excluding evidence is harmless where other equally strong evidence to the same effect is received.

RAILROADS—FIRES—INSTRUCTION NOT ASSUMING FACTS.

4. Where it is shown that a fire was the result of the operation of a railroad train, an instruction that "it is not necessary that any specific act of negligence be pointed out, if the circumstances established are such as a jury may infer negligence from, such as running at a high rate of speed, working the engine hard, overloading it, or other acts indicating an unusual course in operating the engine," etc., is not erroneous, as assuming that the train was running at a high rate of speed.

RAILROADS—RUNNING RAPIDLY AS NEGLIGENCE.

5. The running of a train at a high speed cannot usually be said, as a matter of law, to be negligent, it being but a fact to be considered in connection with other circumstances.

ALLEGATIONS AND PROOFS—RAILROADS—FIRES.

6. The allegations in a complaint that the engine that caused the fire "was unskillfully and improperly constructed, and improperly and negligently managed by defendant and its servants, and, by reason of said improper and negligent management, large quantities of sparks were emitted," are sufficiently broad to let in proof of the character of the care and caution exercised by defendant's employees in managing the engine referred to as doing the damage, and whether they were negligent in the performance of their duties, and such instruction does not submit to the jury an issue without the scope of the pleadings.

RAILROADS—FIRES—INSTRUCTION AS TO USUAL CARE OF EMPLOYEES.

7. In an action against a railroad company for damages resulting from a fire caused by sparks from an engine, an instruction: "You have a right to take into consideration every fact and circumstance which tends to demonstrate * * the kind of care and caution usually exercised by defendant's employees in charge of the engine which is alleged to have set the fire," is not objectionable, since, if the jury should conclude that the employees in charge of that engine had usually been careless or negligent, they might with propriety infer that such employees were careless at the time the fire in question occurred.

From Umatilla: WILLIAM R. ELLIS, Judge.

Action by the Norwich Union Fire Insurance Society against the Oregon Railroad & Navigation Co., to recover the amount of damage suffered through the destruction by fire of some property insured by plaintiff. The facts are stated in the opinion. There was a judgment for plaintiff, and defendant appeals.

AFFIRMED.

For appellant there was an oral argument by *Mr. Henry F. Conner*, with a brief over the names of *William W. Cotton, H. F. Conner* and *Carter & Raley*, to this effect.

I. The proceedings of an association of the character of the Master Mechanics' Association may be proven by parol: 6 Thompson, Corporations, §§ 5175 and 7747: *Columbia Nav. Co.* v. *Vancouver Transp. Co.* 32 Or. 532 (52 Pac. 513); *Newell* v. *Borden*, 128 Mass. 31; *Ray* v. *Powers*, 134 Mass. 22, 25; *Wilcox* v. *Arnold*, 162 Mass. 577.

The Master Mechanics' Association, so far as was disclosed by the testimony of the witness Graham, was a voluntary association of individuals, formed for purposes of mutual benefit, and for the exchange of ideas. It does not appear from the testimony what officers it has, if any, nor whether it has an officer whose duty it is to keep a record of its proceedings. It does appear, however, that the association, as such, recommended the extension front end, and this was withdrawn from the jury's consideration by the ruling complained of. Presumably, the motion to strike was based upon the idea that there was written evidence of the proceedings of the association; but there is no evidence that this was the fact. So far as the court below or this court knows, there was no formal record of the proceedings, and certainly no obligation was imposed by law requiring one to be kept. That parol evidence is admissible in a case of this character, without regard to whether there is a formal record in existence or not, is well settled by the authorities cited.

II. Running at a high rate of speed is not a circumstance from which the jury might properly infer negligence: Thompson, Corporations, §§ 1873 and 2265; *Louisville & N. R. Co.* v. *Marbury Lum. Co.* 32 South. 745 (28 Am. & Eng. R. Cas., N. S., 68); *Railroad Co.* v. *Ferguson,* 79 Va. 241; *Hagen* v. *Chicago, etc. R. Co.* 86 Mich. 615; *Western Ry. Co.* v. *Sistrunk,* 85 Ala. 352, 358 (5 South. 79); *Nashville R. Co.* v. *Hembree,* 85 Ala. 483, 485 (5 South. 175); *Perdue* v. *Railroad Co.* 100 Ala. 539 (14 South. 366); *Omaha & Rep. Val. R. Co.* v. *Talbot,* 48 Neb. 627, 637 (67 N. W. 599).

III. The plaintiff must recover upon the ground of the particular acts set forth in the complaint: *Normile* v. *Oregon Nav. Co.* 41 Or. 177 (69 Pac. 928); *Babcock* v. *Chicago & N. W. Ry. Co.* 72 Iowa, 197 (33 N. W. 628); *Gulf Ry. Co.* v. *Johnson,* 67 S. W. 182.

For respondent there was an oral argument by *Mr. John J. Ballery* and *Mr. John McCourt,* with a brief to this effect.

1. What strange aberrations the human mind is capable of, or is it that counsel for defendant imagines this court to be afflicted with legal strabismus? Spellman said, that some chan-

cellors had long consciences; that the chancellor's conscience was like the chancellor's foot; some had a long foot and some had a short foot, and we presume that it is the same with master mechanics. We refer to their knowledge and ability; not to their consciences. There is no law which authorizes them individually or collectively to bind us by anything that they recommend.

Counsel says that "parol evidence is admissible in a case of this character, without regard to whether there is a formal record in existence or not," and he says that this is well settled. Shades of Mansfield and Marshall! Parol evidence, or any kind of evidence! If there had been a resolution as long as the moral law, recommending the extension front end, it would not be admissible. Well settled to be admissible! Why, there is not a case in the books where anything of the kind has been admitted. No court would admit it.

All the cases cited by the defendant's counsel are cases where the voluntary association was a party. The evidence was offered as acts or declarations against the interest of the parties making them. It was evidence tending to show some contract or undertaking material to the controversy. Of course it was competent, but the question involved in the cases cited looks about as much like the question before this court as a bake oven looks like a threshing machine. We insist that there was no error in excluding that evidence and striking out the answer of the witness. As well might a railroad company try to prove that it is not a common carrier by a resolution of a lot of conductors, that they recommend that no railroad company be considered a common carrier, and that they do not consider them such. We have been unable to find a case directly in point, nor do we think any one ever attempted to introduce such evidence.

Now, those master mechanics, like Graham, if they recommended the extension front end, were simply voicing their opinions from what each had told the other, together, perhaps, with what they had learned from their own experience but how much was experience and how much was what somebody told them? Under such a rule the plaintiff would have no opportunity to

ascertain.   No such rule exists, and it would be most detrimental to the administration of justice if this court, or any other court of last resort, should make such a rule.   The recommendations of no society, of any kind, or character, or resolution as to what is the best, or what is good or bad, has ever been admitted in any case.   There are master mechanics' associations, associations of engineers, conductors, firemen, brakemen, physicians and surgeons, artists, stock raisers of every kind, wool growers and manufacturers of every description, and there is not one case in the books anywhere which ever has held that the recommendations of such associations are admissible in evidence, and the court knows, as a matter of fact, that such associations are eternally resoluting and recommending, and have been for centuries.   If their resolutions or recommendations were evidence, some other older genius would have discovered it long ago: Rogers, Exp. Test., §§ 4, 5, 6, 13, 14, 20, 31, 43 and 45.

2. All the counsel's argument on the second assignment of error is based upon one expression.   We submit that there was nothing in it.   Then the counsel attempts to say that if there was evidence of running at a high rate of speed, that fact was not evidence of negligence, and he cites a lot of cases.   They have nothing to do with the question before the court, and it is well settled, beyond any cavil, and has become text-book law, notwithstanding the great big capitals of the defendant's counsel, that running at a high rate of speed may be negligence.   It is passing strange that counsel should take the trouble to enunciate in capitals as a principle of law a statement which is diametrically opposed to what is the law, and it is deplorable that a bright young man should have so little regard for himself and a profession of which it has been said, "Of law no less can be said than that its seat is in the bosom of God—her voice the harmony of the world."

Negligence is always a question of circumstances and conditions.   Running an engine at sixty miles an hour down hill, through snow banks in an open prairie country, or through Death Valley, where nobody lives, and there is nothing to be burned, would not be negligence.   Running an engine up a stiff grade,

on a curve, with a heavy load, along a string of powder mills and houses, and through a populous city, at twelve or fifteen miles an hour might be negligence. Courts have never undertaken to say what would be negligence, as a general rule, leaving what would and what would not be negligence (as circumstances and conditions in each particular case must necessarily diverge from the circumstances and conditions of every other case at some point) to the circumstances of each case. Each one must be determined by the facts and conditions peculiar to itself: *Koontz* v. *Oregon R. & Nav. Co.* 20 Or. 3, 19 (23 Pac. 820); *Gandy* v. *Chicago & N. W. R. Co.* 30 Iowa 420, 422 (6 Am. Rep. 682); *North Shore Co.* v. *McWillie*, 17 Kan. 511; *Kansas City, Ft. Scott, etc. R. Co.* v. *Chamberlain*, 61 Kan. 859 (60 Pac. 15, 17); *Martin* v. *Western Union R. Co.* 23 Wis. 437, 439 (99 Am. Dec. 189); *Brusberg* v. *Milwaukee, L. S. & W. Ry. Co.* 50 Wis. 232; *Wilson* v. *Northern Pac. Ry. Co.* 43 Minn. 519 (45 N. W. 1132); *Hockstedler* v. *Dubuque & S. C. Ry. Co.* 55 N. W. 74; Thompson, Negligence, §§ 1873, 1874, and 1875; Elliott, Railroads, § 1244.

3. It is hard to understand what the fifth and sixth points made in defendant's brief are intended to signify, and no elucidation is given by an examination of the authorities cited. Counsel says that the plaintiff must recover upon the ground of the particular acts of negligence set forth in the complaint. That would seem to be self-evident, but no particular acts of negligence are set forth. The allegations are very general ones, which plaintiffs in such cases have a right to make, because they cannot know the particular defects or the particular acts of carelessness which caused the fire, those being peculiarly within the knowledge of the defendant, its servants, agents and employees. If counsel was not satisfied with the general allegations of the complaint concerning the negligence, carelessness and improper running and managing of the engine, his business was to ask the court to require plaintiff to make them more definite and certain.

4. The court was eminently correct in telling the jury that they might consider the kind of care and caution usually exer-

cised by defendant's employees in charge of the engine which set the fire. What has the question as to identification of the engine got to do with that? What is the counsel trying to say? The question of the identity of the engine had nothing to do with this. The evidence of other fires by other engines the court excluded in this case; perhaps he was right. It was so palpable that those two engines set the fire that probably it was unnecessary to introduce cumulative evidence, and the court ruled it out. We can't conceive what counsel means by saying the engine in question having been identified, the kind of care and caution actually exercised had no relevancy. What difference does it make whether the engine was identified or not as to the care and caution which they used, as the kind of care and caution usually exercised by them would be matters which the jury would have a right to take into consideration in determining what kind of care and caution they used at the time of the fire, and it would not make any difference whether the engine was identified or not.

We submit that there is nothing in any of the errors assigned, and that this case ought to be affirmed. There was absolutely no reason for bringing this case here. It is palpable that counsel, who is well known to be industrious and laborious, has examined into each question. He has not misread the authorities which he cited; he understands them well enough. The counsel is very bright, quite ingenious, and sometimes quite disingenuous, but the statute has provided for just such appeals as this, which are frivolous. Defendant's brief is here for the purpose, perhaps, of escaping the penalty prescribed by the State for bringing a frivolous appeal, but we must submit this was frivolous. It is not here in good faith, and we do think the court ought to impose the penalty of the statute, the addition of ten per cent, and we respectfully ask this court to so order.

MR. JUSTICE WOLVERTON delivered the opinion.

This action is to recover damages for loss occasioned by fire alleged to have been caused by the negligent operation and management of a freight train and certain engines used for propelling it. The plaintiff recovered judgment, and the defendant appeals. The errors assigned for reversal arise upon the direction of the

court in taking an item of evidence from the jury, and upon certain instructions given on the submission of the case.

1. J. F. Graham, a witness for the defendant, testified that he was a master mechanic; that he had had many years of experience with various railroad companies in the motive power and car department, and had been for nine years in charge of the defendant's rolling stock; that he knew of no appliance that would entirely prevent the escape of sparks from locomotives; that the Master Mechanics' Association was an aggregation of master mechanics throughout the country, which met once a year; that all railroads in the country were represented at their annual meetings, at which different questions pertaining to locomotive construction were discussed; that the appliance for preventing the escape of sparks from locomotive stacks, known as the extension front end, in general use all over the country, was adopted by the railroads in general, and by the Master Mechanics' Association. Whereupon the following question was put to him, namely: "They (the Master Mechanics' Association) recommended the extension front end?" To which he answered: "Yes, sir." On motion of plaintiff's counsel, this answer was withdrawn from the jury, and the defendant predicates error upon the action of the court in that regard. It is insisted that this matter was pertinent to show that defendant had exercised due and reasonable care in selecting and adopting the most approved appliance in modern use for the prevention of the escape of sparks from its locomotives. This may be conceded. It is next argued that parol evidence is admissible to show the action of the association in making the recommendation. It is so familiar to those who have any knowledge at all of the manner of conducting the meetings of such associations, and the business transacted thereat, that minutes or records of the proceedings are kept, that it must be taken judicially to be the general rule and practice.

2. These minutes or records constitute, of course, primary evidence of what was done; and, in so far at least as they affect third parties—those not participating in or connected with the association or the business transacted by it—the better reason

would suggest that the best evidence should be produced, or, as is usual in other cases, its absence accounted for before admitting parol evidence of their contents, or it be shown that no minutes were kept before resorting to parol to show what was done. These observations would have no application, of course, where it was sought to impeach the record, for in such a case parol evidence is always permitted to show what was actually done. The objection to the admission of the parol statement was based upon the ground that it was not the best evidence, as well as upon its immateriality and irrelevancy, and, as the absence of the record or minutes of the association showing the recommendation was not accounted for, we think the statement of the witness was properly taken from the jury.

3. But however this may be, if we concede that there was error in withdrawing this particular proof, it would hurt so little that it would be scarcely perceptible, because the witness had previously testified that this arrester had been adopted by the railroads in general, and by this association, and, when it was asked if the assocation recommended the patent, the court said it could not permit the proof in that way; but proof in fully as strong, if not a stronger, form was already before the jury without objection. The error, therefore, is not well assigned.

4. The next assignment is based upon the ninth paragraph of the court's charge to the jury, which is as follows:

"It is not necessary that any specific act of negligence be pointed out, if the circumstances established are such as a jury may infer negligence from, such as running at a high rate of speed, working the engine hard, overloading it, and other acts indicating an unusual course in operating the engine—are things the jury may consider in determining whether or not the defendant was guilty of negligence."

An objection to the instruction is that it assumes a fact touching which there was no evidence tending to establish, namely, the running of the train at a high rate of speed. This, we are satisfied, mistakes the intendment of the court. The purpose is manifest not to charge the jury as though the running of the train at a high rate of speed was a fact in evidence, or as if there was evidence tending to prove the fact, but the expression was

employed as illustrative, merely, to indicate the manner and nature of the acts from which the jury might infer negligence in the absence of proof of any specific acts which in themselves would constitute negligence. In other words, the court instructed that direct proof of the identical act or acts of negligence that permitted the escape of fire and its communication to the building was not necessary, but, when it is seen that the fire was the result of the operation of the train, then that the jury may infer negligence, in the absence of any direct proof of the kind suggested, from any acts of the company's agents or employees indicating an unusual course, and calculated to contribute to the result. Then, as illustrative of such acts as may be so considered, the court enumerates, among others, the running of the train at a high rate of speed, not that they had a right to consider the fact as one attempted to be shown, and, if found to be true, that it would constitute a circumstance from which they could infer negligence. In this view, the instruction was not misleading, and therefore not error.

5. We may say in this connection that whether the fact of running a train at a high rate of speed is an act of negligence depends always upon the circumstances, environments, and conditions under which it is being so propelled. A case is hardly conceivable where it would be proper for the court to say that the running of a train at a high rate of speed is per se negligence, or within itself negligence as a matter of law; but, when connected with the environments, such as passing through a populous city, or in proximity to buildings highly inflammable, especially when used in connection with the operation of the road, and under conditions that cause the engines to labor excessively, and thereby emit unusual quantities of sparks and fire, it might constitute an act from which the jury could very properly infer negligence in the absence of direct proof. This seems to be the doctrine of the texts and the cases cited: 2 Thompson, Negligence, § 1873; *Perdue* v. *Louisville & N. R. Co.* 100 Ala. 535 (14 South. 366); *Gandy* v. *Chicago & N. W. R. Co.* 30 Iowa, 420 (6 Am. Rep. 682); *Hagan* v. *Railroad Co.* 86 Mich. 615 (49 N. W. 509); *Brusberg* v. *Milwaukee, L. S. & W. Ry. Co.* 50

Wis. 231 (6 N. W. 821); *Kansas City, Ft. S. etc., R. Co.* v. *Chamberlin,* 61 Kan. 859 (60 Pac. 15). That the court's instruction is readily susceptible of the construction we have given it is also inferable from other instructions in connection with which it must be read, notably the fourth, tenth, and nineteenth, and some others that follow.

6. The third and last assignment of error is predicated upon the twelfth paragraph of the charge. It is in language following:

"You have a right to take into consideration every fact and circumstance which tends to demonstrate, subject to the explanation of the defendant, the kind of care and caution usually exercised by defendant's employees in charge of the engine which is alleged to have set the fire, and also the sufficiency of the equipments for preventing the escape of fire used by the defendant on this train in operating the same, and to judge as to the probable state of repair in which the engines which hauled this train were."

Two objections are noted and relied upon. The first, briefly stated, is that the instruction submitted to the jury an issue outside the pleadings; and the second, that, the engines doing the damage having been identified, it was not proper for the jury to consider what the employees may have done usually, as bearing upon or having anything to do with what they did at the time the fire was communicated. It is alleged that the engine "was unskillfully and improperly constructed, and improperly, carelessly, and negligently run and managed * * by said defendant, and by its agents, servants, and employees, and, by reason of said * * improper, careless, and negligent management * * large quantities of sparks" "were emitted and ejected," etc. This is manifestly broad enough to let in proof of the nature and character of the care and caution exercised by such servants and employees in conducting and managing the particular engine or engines alluded to, and involved in doing the damage, and whether or not they were negligent in the performance of their duties. There was no attempt to instruct, as it seems to be inferred, that the jury might consider whether the company had employed unskillful agents and employees, or as to whether the employees were in fact unskillful, as contradistinguished from careless or incautious. The authorities cited, namely, *Babcock*

v. *Chicago R. Co.* 72 Iowa, 197 (28 N. W. 644, 33 N. W. 628), and *Gulf, etc., R. Co.* v. *Johnson,* 28 Tex. Civ. App. 395 (67 S. W. 182), go to that sort of case, but are without application here. The objection is therefore untenable.

7. As to the second, it should be observed that the term "usually" was applied to the employees in charge of the particular engines in question, not to the employees in general, or to those in charge of other engines; and the inference deducible from the instruction is that, if the employees in charge of this engine had usually been careless and incautious or negligent in running it, if the jury found such to be the case, they might reasonably conclude that they were negligent at this particular time; and in this interpretation there is no vice in the instruction, under whatever view we may take of the law as to whether it may be permitted to show generally that other engines had scattered fire at other times, or that other persons in charge of them were usually careless or negligent: *Lesser Cotton Co.* v. *St. Louis I. M. & S. R. Co.* 114 Fed. 133 (52 C. C. A. 95).

The judgment of the trial court should be affirmed, and it is so ordered.                                    AFFIRMED.

Argued 5 January, decided 30 January, 1905.
### HILDEBRAND *v.* UNITED ARTISANS.
79 Pac. 347.

CORPORATIONS—SERVING PROCESS ON RESIDENT AGENT.

1. Under Section 55, B. & C. Comp., providing for service of process on a resident "agent" of a corporation under some circumstances, service on a nonresident fraternal benefit corporation may be made by delivering the process to one who, as secretary of the local branch of the organization, is required to receive assessments from members and remit them to the head office, to keep and report the record of the standing of local members, to notify the head office of the death of members and to return the complete proofs of death, such a person being an "agent" of the corporation.

VENUE OF ACTION ON LIFE INSURANCE POLICY.

2. Under a statute providing that a corporation may be sued in the county where the cause of action arose, a life insurance company may be sued on its policy in the county whereof its beneficiary was an inhabitant at the time of his death.

SUFFICIENCY OF RETURN OF SERVICE ON AGENT OF CORPORATION.

3. Where an action has been commenced against a corporation in the county where the cause of action arose, as permitted by Section 55, B. & C. Comp., instead of in the county where the company has its principal place of business, as provided by Section 44, B. & C. Comp., the return on the summons must show that service was made on one of the principal officers of the corporation, or state on what clerk or agent it was served, and the reason for such substituted service.