# Wheeler v. Standard Steel Co.

### Injury to Servant.

(Decided May 11, 1916.   Rehearing denied June 30, 1916.
72 South. 254.)

**Master and Servant; Injury to Servant; Unavoidable Accident.—** Where a servant went upon an incline to chain cars so that they would not move, while he and his gang were repairing the gearing to a drum which moved the cars by means of cables, and was injured by a fellow servant falling and catching hold of a throttle lever, which action started the engine, thus moving the cars where the servant was working, such servant could not recover, since the accident was one not reasonably to be foreseen by the employer.

APPEAL from Gadsden City Court.
Heard before Hon. JOHN H. DISQUE.
Action by Fred F. Wheeler against the Standard Steel Company, for damages for injuries suffered while in its employment. Judgment for defendant and plaintiff appeals.   Affirmed.

W. J. BOYKIN, and J. M. MILLER, for appellant.   HOOD & MURPHREE, for appellee.

GARDNER, J.—Suit by appellant against appellee for the recovery of damages for personal injuries, sustained by plaintiff while in the employment of defendant, and while in the performance of the duties of such employment.

Upon the conclusion of all the evidence in the case, the trial court gave the affirmative charge requested by the defendant, with hypothesis.   This is the only question argued by counsel for appellant on this appeal.   In brief of counsel for appellee there appears a very orderly and succinct statement of the most pertinent facts in the case, the correctness of which statement is not questioned by counsel for appellant in their brief filed in reply thereto; and, after a careful examination of the record, we have concluded to adopt this statement in this opinion.   Counsel's statement of the facts is as follows: "Appellant was a member of what was known as the riggers' gang, whose duty it was to do general repair work at the plant of appellee.   At the time he was injured, he and his gang had gone, under the direction of the

superintendent of the gang, to the blast furnace for the purpose of repairing the gear of a drum, which was geared to a stationary engine and operated by said engine. Around the drum extended two wire rope cables, the ends of which were fastened to two skip hoist cars, called, in the evidence, gophers. The engine, which was geared to the drum, caused the drum to revolve, which in turn, by said wire rope cables, pulled the skip hoist cars up an inclined double railroad track, which double track extended from the ground upward at an angle to the top of the blast furnace. The gophers were used for the purpose of conveying iron ore, limestone, and other material to the top of the furnace to be dumped therein in the process of manufacturing pig iron. Along by the side of the inclined railroad track, extended from the ground to the top of the furnace a series of steps, enabling employees to go from the ground to the top of the furnace, or to any point on the inclined track by the use of such steps. On the occasion in question, appellant and his gang were engaged in repairing the gear of the drum. The drum and the engine to which it was attached were located in a small brick house underneath the inclined railroad track, and the wire rope cables extended from the ground upward through the roof of the house to the railroad track, and were attached to the two gopher cars operated thereon. It was necessary to chain the two gopher cars to the railroad track so that the cables attached to them could be slackened, in the repair of the gear of the drum. Appellant and one or two of his fellow servants were directed by their superintendent to go up the incline and chain the gopher cars to the incline. Before they undertook to do that work, the steam had been cut off of the engine which operated the drum by the proper setting of the steam throttle. In other words, the engine had been stopped by cutting off the steam. The gopher cars would not move and could not be moved except by turning on the steam and starting the engine, they being attached to the wire rope cables, which in turn were wound around the drum, and which in turn was geared to the engine. The throttle of the engine was opened and closed by a lever, which was from 6½ to 7 feet above the ground—a little higher than a man's head. The throttle lever was not immediately over the drum but was from three to four feet to one side. While appellant was on the inclined track, Harvey Russell, a member of the riggers' gang, and one or two others had gone into the engine house for the purpose of making ready

to repair the gear of the drum, it being their duty to make such repairs. Russell had climbed up to near the roof of the engine house, for the purpose of doing some work there preparatory to repairing the gear of the drum. He was standing on the drum, and while standing there, his foot slipped, and in falling he involuntarily grabbed the throttle lever, thereby involuntarily opening the throttle and starting the engine, which moved one of the gopher cars against appellant, inflicting the injuries complained of. The evidence is without conflict that the gophers could not have been moved except by turning the steam on the engine for the reasons hereinbefore set out. There is no evidence that the throttle was defective or that it was an unusual one or was unusually equipped. Nothing appears from which the conclusion could be drawn that the throttle lever was not a proper contrivance."

While some counts seek recovery as for a defect in the ways, works, machinery, etc., it is quite clear that they find no support in the evidence, justifying the submission of any such issue to the jury.—*L. & N. R. R. Co. v. Hall,* 193 Ala. 648, 69 South. 106. Indeed, it is not so insisted on this appeal by counsel for appellant. In their elaborate brief appellant's counsel appear to rely more largely, if not entirely, upon count 9, which counted for recovery upon the negligence of one McDaniel, plaintiff's foreman, in that he ordered plaintiff to ascend to a great height from the ground and fasten the "gophers" to the track over which they ran, without first exercising reasonable care to see that the gophers were not moved while plaintiff was so in the act of fastening them with a chain.

It appears from the evidence without dispute, that the engine was in a brick house which was kept locked and was entered only when occasion demanded, it being operated from the outside by means of a pulley. The work to be done in the engine house was not on the engine, but was to take the gear off the drum, which was no part of the engine, but which was connected with the gear of the engine. As appears from the foregoing statement, the throttle lever was from three to four feet to one side of the drum, and about seven feet above the ground, and steam had been cut off the engine by the proper setting of the throttle. The throttle lever was about four feet above the drum. McDaniel, the foreman, said: "After I had the gopher stopped, I had the throttle put on the center, and cut the steam off the engine, done

[Wheeler v. Standard Steel Co.].

the best I can to keep it from moving." The evidence is without dispute that the engine was started on account of one of the members of the riggers' gang, one Russell, falling, while doing some work preparatory to repairing the gear of the drum. He was standing on the drum and his foot slipped, and in falling he involuntarily caught at the throttle lever, thereby opening the throttle and starting the engine.

Upon the question of negligence, this court, in the recent case of *Sou. Ry. Co. v. Carter*, 164 Ala. 103, 51 South. 147, made use of the following quotations which we think find some application here: "A much-quoted definition of negligence is that of *Blythe v. Birmingham Waterworks*, 11 Ex. 781, as follows: 'The omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' In commenting upon this definition Mr. Pollock has said: 'Now, a reasonable man can be guided only by a reasonable estimate of probabilities.' If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither reject what he can forecast as probable, nor waste his anxiety on events that are barely possible.—Pollock on Torts, 36."

It is conceded by counsel for both parties that the trial court was actuated in his ruling by the recent case of *Tobler v. Pioneer Mining & Mfg. Co.*, 166 Ala. 482, 52 South. 86. That case bears very close analogy to the one here under consideration; and we are of the opinion that the underlying principle which controls the result in that case is conclusive of the case at bar. In the instant case, the undisputed evidence shows that the engine was started by the involuntary act of a coemployee of plaintiff's, a member of the riggers' gang. In the *Tobler Case* the starting of the engine was attributed to the wrongful act of a third person, though this person may also have been one of the employees of defendant; and, speaking of this question, the opinion says: "A wrongful act of independent third persons (it conclusively appears that this was such, though they may have been the servants of the master), not actually intended or reasonably to be expected by the master, is not the consequence of the master's

wrong, and he is not bound to anticipate the general probability of such acts."

In the present case, we hardly think that it could be contended that it was reasonably to be expected by the defendant that the employee, engaged in working the drum, would slip and fall, and, in the act of falling, involuntarily throw out his arm and happen to grasp the throttle of the engine a few feet away. That the plaintiff has been permanently injured seems clearly to appear, and the accident is deplorable. But we conclude, after a most careful examination of the evidence, that there has been shown no negligence on account of which liability can be fastened upon the master. This conclusion we think is fully sustained by the *Tobler Case;* and the affirmative charge was therefore properly given for the defendant.—*W. Ry. of Ala. v. Mutch,* 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; *Going v. Sou. Ry. Co.,* 192 Ala. 665, 69 South. 73; *Williams v. Woodward I. Co.,* 106 Ala. 254, 17 South. 517.

The judgment of the court below will therefore be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.