(83 South. 327)
DWIGHT MFG. CO. v. VAUGHN. (7 Div. 7.)

(Supreme Court of Alabama. Nov. 13, 1919.)

1. MASTER AND SERVANT ⊕⇒315—OWNER NOT LIABLE FOR NEGLIGENCE OF INDEPENDENT CONTRACTOR.

Ordinarily, owner of building being constructed would not be liable for negligent acts of independent contractor constructing building.

2. MASTER AND SERVANT ⊕⇒284(2)—WHETHER BUILDING LABORER WAS EMPLOYÉ OF OWNER JURY QUESTION.

In building laborer's action for injuries against owner of building being constructed, where there was evidence that superintendent of construction who employed plaintiff, and from whom plaintiff received his weekly pay, was master mechanic for the owner, and where owner's contract with contractor permitted owner to take over work, which in fact owner did upon contractor's default, whether plaintiff was in the employ of owner as well as the contractor *held* for the jury.

3. MASTER AND SERVANT ⊕⇒128, 190(4)—SUPERINTENDENT'S ADJUSTMENT OF ROPE IS ACT OF FELLOW SERVANT; MASTER NOT LIABLE FOR IMPROPER USE OF PROPER APPLIANCE.

Where master furnished building employés rope with which to hoist lumber, and one of the laborers was injured because of failure to make a double sling instead of a single noose or loop, master was not liable for injuries, though the superintendent made the single loop and instructed the men to use it, since the superintendent was for such purpose a mere fellow servant, and since the master, having furnished a safe instrumentality, was not liable for negligent use thereof by employés.

4. MASTER AND SERVANT ⊕⇒137(1) — PILING LUMBER ON PLATFORM BELOW LUMBER BEING HOISTED NOT NEGLIGENCE.

In action for injuries to a building laborer while hoisting lumber from platform to roof

sustained when lumber being hoisted fell and struck pile of lumber causing piece thereof to strike plaintiff, the piling of the lumber upon such platform so that lumber was piled below the lumber being hoisted for convenience in hoisting it *held* not negligence.

Appeal from Circuit Court, Etawah County; O. A. Steele, Judge.

Action by J. A. Vaughn against the Dwight Manufacturing Company and another for damages sustained while in the employ of the defendants. Judgment for the plaintiff, and defendant Dwight Manufacturing Company appeals. Reversed and remanded.

The facts sufficiently appear from the opinion.

Dortch, Martin & Allen and O. R. Hood, all of Gadsden, for appellant. The record shows that plaintiff was the servant of an independent contractor, and that the general charge was due appellant on that account. 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; 166 N. Y. 305, 59 N. E. 914; 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A, 474; 14 R. C. L. 71; 1 Bailey, Personal Injuries, 116; 189 Ala. 643, 66 South. 609, 148 Ala. 146, 41 South. 988, 197 Ala. 473, 73 South. 33; 49 Mich. 164, 13 N. W. 499, 43 Am. Rep. 456. The appliances were not unfit or unsafe. 193 Ala. 654, 69 South. 106; 192 Ala. 658, 68 South. 1008. A new trial should have been granted on the above authorities.

P. E. Culli, of Gadsden, for appellee. The defendant was not entitled to the affirmative charge. 26 Cyc. 1459, and authorities there cited. Under the evidence Kershaw was the common servant of the Dwight Manufacturing Company. 1 Thompson on Negligence, §§ 657–659; 165 N. C. 439, 81 S. E. 603, 51 L. R. A. (N. S.) 866; 129 Tenn. 464, 166 S. W. 752, 51 L. R. A. (N. S.) 1116; 194 Ala. 172, 69 South. 586; 81 South. 359; 166 Ala. 517, 52 South. 86. The duty was nondelegable to furnish suitable appliances. 149 Ala. 450, 43 South. 378; 26 Cyc. 1097.

GARDNER, J. Appellee brought this suit against the Dwight Manufacturing Company and one W. T. Christopher for the recovery of damages sustained while at work on a building being erected for the Dwight Manufacturing Company in Alabama City. There was judgment in favor of the plaintiff against the Dwight Manufacturing Company, from which said company prosecutes this appeal.

The cause was submitted to the jury on counts 1, 3, and 5, the general issue, and pleas of contributory negligence.

The plaintiff was one of the workmen assisting in hoisting lumber from a platform, which was a few feet from the ground floor of the building, to the roof of the building, which was 40 or 50 feet high. The platform was 4 or 5 feet above the ground, and even with the bottom floor, just outside of the building. The lumber was loaded on the platform from a railroad car standing near by. The appliance used for hoisting the lumber to the roof was a simple rope and tackle apparatus, consisting of a pole or brace extending over the wall of the building at its top, with a single block above and a single block below, and a rope running through both blocks. The lumber to be hoisted was fastened to the sling rope by means of a slip knot, or running noose, that tightened as the hoisted lumber made its ascent to the roof of the building. At the time of his injury, plaintiff lifted one end of the piece of lumber so that his fellow workman, Merritt, could get the rope underneath. This piece of lumber was 3 or 4 inches thick, 8 inches wide, and some 16 or 18 feet long. Plaintiff steadied the end of same as long as he could reach it as it was being hoisted, and then stepped to one side. The piece of lumber was fastened a little off the center so that it would go up in a perpendicular manner. When it reached near the top of the building, it slipped from the rope, falling upon the lumber piled upon the platform, and struck a piece of lumber which flew up and struck the plaintiff, causing very serious injuries.

Count 1 relied for recovery upon a breach by the master of the common-law duty to provide a safe appliance, and counts 3 and 5 rested for recovery upon the negligence of one Kershaw, who was alleged to have had superintendence intrusted to him, and while in the exercise of such superintendence negligently permitted or allowed the lumber to be placed at the point where plaintiff was engaged in hoisting the same so that in the event one of said pieces of lumber fell it would strike the pile of lumber and cause pieces of the lumber to fly up and likely injure the plaintiff. Each of the counts alleged that the plaintiff was in the employ of the defendants, Dwight Manufacturing Company and W. T. Christopher.

It is most earnestly insisted in argument of counsel for appellant that the evidence was insufficient for submission to the jury, that any relationship of master and servant existed as between the Dwight Manufacturing Company and the plaintiff, and that therefore error was committed in refusing the general affirmative charge in its favor. This presents the first question for consideration.

[1] The building which was in course of construction was being erected for the Dwight Manufacturing Company upon its property in Alabama City and within the fence surrounding such property. The said company entered into a written contract with W. T. Christopher for the erection of said building for a specified sum; the date for its completion being fixed at September 1, 1917. The contract is quite lengthy and is set out in full in the record. We think it clearly appears that under its terms W. T. Christopher was an independent contractor. Ordinarily,

of course, under the general rule prevailing in this state, appellant would not be liable for the negligent acts of said independent contractor. Bains v. Dank, 74 South. 341;[1] Scoggins v. A. & G. P. Cement Co., 179 Ala. 213, 60 South. 175. The plaintiff was injured on November 27th while working at night on said building; and, as previously stated, the time for the completion of the work was September 1st, previous thereto.

It appears to be conceded by the parties that, under the terms of said contract, in the event of certain defaults on the part of the contractor in the erection of said building, the Dwight Manufacturing Company had the right to intervene and assist in its erection to further promote the progress of the work. The theory of the plaintiff is that there was such default, and that the Dwight Manufacturing Company had seen fit to assist the contractor in the further progress of the work, and offered testimony which it is insisted tends to support this view. We will very briefly state the summary of this evidence. The contract provided that the Dwight Manufacturing Company could under certain conditions furnish men and material to aid in the further progress of the work; that the tools with which the work was being done, and the rope from which the sling or noose was made, came from the toolhouse of the Dwight Manufacturing Company. There were several men engaged in hoisting the lumber with the plaintiff, each of whom was in the regular employ of the Dwight Manufacturing Company during the day (this work being done at night). The plaintiff, however, was not in the regular employ of said company and was doing this extra work at night and on Sundays. One Smith, who was assisting in this work, was the labor foreman of the Dwight Manufacturing Company, and Kershaw, who seems to have been superintending the job, was master mechanic for the Dwight Company. The work was in process of completion 70 days after the building should have been completed and turned over by the contractor. About 2 months after plaintiff's injury, the Dwight Manufacturing Company took over the work for the completion of the building; Christopher, the contractor, signing a release of his contract because, on account of financial embarrassment, he could not further proceed with the construction. The plaintiff was employed by Kershaw, and from Kershaw received his weekly pay in a pay envelope of the Dwight Manufacturing Company.

[2] We are mindful of the Dwight Manufacturing Company's testimony to the effect that Kershaw was not working for them during the night, but for Christopher, and that these laborers who were assisting in this work at night were also in Christopher's employ; and that the plaintiff was not on their pay roll, nor was he in fact on that of Christopher's. It is further insisted that the pay envelopes were not the envelopes then in use by the Dwight Company, but were some which they had discarded. Notwithstanding this positive evidence to the contrary, we are persuaded that under the facts and circumstances brought out by the plaintiff, in view of the terms of the contract and the long default of the contractor in the completion of the work and his evident financial embarrassment, the evidence submitted by the plaintiff was sufficient from which the jury might reasonably infer that the Dwight Manufacturing Company had in fact availed itself of the right to assist Christopher in the completion of the job; and that Kershaw in employing the plaintiff was representing this defendant as well as Christopher. It is, of course, acknowledged that Kershaw was employed by Christopher, and therefore the jury could infer that the plaintiff was in the employ of both of them, as was alleged in the complaint. Thompson on Neg. vol. 1, § 659; note to Moore v. So. Ry. Co., 51 L. R. A. (N. S.) 866.

The evidence has been very carefully examined, but will not be here discussed in detail. We content ourselves with stating as our conclusion that the affirmative charge was properly refused upon this ground.

It is next insisted, however, that the affirmative charge was due this defendant upon count 1, upon the theory that said defendant had not been shown to have furnished unsuitable appliances. The plaintiff's theory upon this count of the complaint is that the noose or sling in which the lumber was placed on being hoisted was a single sling and not a double sling. There is some evidence tending to show that, if the sling had been doubled over the piece of lumber, it would doubtless have made it more secure; one witness stating that "with a double loop it is nigh impossible for a plank to slip." There was evidence tending to show that the rope used—out of which the sling or loop was made—was a rope of the Dwight Manufacturing Company, taken from its toolhouse. There was nothing to indicate that this rope was insufficient or unsuitable for the purposes for which it was being used. On the contrary, the evidence is without dispute that it was perfectly sound and did not break, and so far as here appears could have as readily and easily been used to make a double loop as a single one. Kershaw took this rope, made the sling, and showed the men how to use it. We are of the opinion the evidence here brings this phase of the case within the principle announced in Labatt on Master and Servant, vol. 2, § 614, as follows:

"If the master supplies suitable material for the construction of appliances which he is not obliged, and has not undertaken, to furnish in a completed state, and the workmen themselves construct it according to their own judgment, the master is not liable for the manner in which they used the materials thus supplied."

[1] 199 Ala. 250.

Many interesting cases are cited in the note to said section 614, which we will not here attempt to review, but direct attention especially to those of McKinnon v. Norcross, 148 Mass. 533, 20 N. E. 183, 3 L. R. A. 320, and Peschel v. Chi. M. & St. P. Ry. Co., 62 Wis. 338, 21 N. W. 269. A somewhat similar situation was presented in the case of L. & N. R. R. Co. v. Bontrager, 186 Ala. 181, 65 South. 28, where the principle is recognized and applied that, when the material furnished is suitable when properly used, no liability rests upon the master upon the common-law count as to furnishing unsuitable appliances.

[3] We are of the opinion that these authorities demonstrate that the evidence in this case was insufficient to justify a recovery upon count one. It clearly appears that the sling or noose was made from an ordinary rope, and that there was no intention or duty on the part of the master to furnish a completed sling or noose, but that this was a matter left with the workmen themselves. In fact, the appliance or material furnished was a rope, and with the rope there was no fault. The only insistence is that there should have been a double sling made instead of a single noose or loop; but, if there is fault in this, it is chargeable to the superintendent, Kershaw, who made the single loop and instructed the men to use it. As to this particular count, Kershaw stood in the relation of a mere fellow servant to the plaintiff. Langhorn v. Simington, 188 Ala. 337, 66 South. 85. If Kershaw was thus negligent in the use of the rope or in the direction given to the plaintiff and his coworkers, reliance for recovery must rest upon statutory grounds found in the Employers' Liability Act—but which are not relied upon in the counts upon which the cause was tried and the issues joined. There is no evidence tending to show any negligence on the part of the defendants in the selection of workmen, nor any incompetency on the part of Kershaw. The material furnished is shown to have been sound and suitable. There is nothing upon which to rest any common-law liability as attempted in the first count of the complaint, and the defendants were entitled to the affirmative charge, as requested, as to this count.

[4] We are also of the opinion that the defendants were entitled to the affirmative charge upon counts 3 and 5. As stated above, the lumber was in the car which was on the track near the platform, and Kershaw ordered that it be piled upon the platform convenient for handling in hoisting it to the roof. The lumber was so placed on the platform as to be almost directly under the piece of lumber being hoisted. As this piece slipped from the sling, it fell upon this pile of lumber, causing another piece to fly up and strike the plaintiff. Counts 3 and 5 rested for recovery on the negligence of the superintendent, Ker-

shaw, in permitting the pile of lumber to remain in that place.

As to what is the proximate cause of an injury in cases of this character is frequently a question of very difficult solution, and it may be very seriously doubted that the placing of the lumber on the platform in this particular place could be said to have been the proximate cause of plaintiff's injuries. Western Ry. Co. v. Mutch, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Wheeler v. Standard Steel Co., 196 Ala. 634, 72 South. 254; Garrett v. L. & N. R. R. Co., 196 Ala. 52, 71 South. 685. This question, however, we need not, and do not, determine, as in this case we do not reach that point.

Under counts 3 and 5, it must first be determined that there was sufficient evidence for submission to the jury that this conduct on the part of Kershaw, the superintendent, was negligent. The following quotation in Wheeler v. Standard Steel Co., supra, finds application here:

"A much-quoted definition of negligence is that of Blythe v. Birmingham Waterworks, 11 Ex. 781, as follows: 'The omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' In commenting upon this definition Mr. Pollock has said: 'Now, a reasonable man can be guided only by a reasonable estimate of probabilities.' If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither reject what he can forecast as probable, nor waste his anxiety on events that are barely possible. Pollock on Torts, 36."

The lumber was piled where it was most convenient to be handled—in reach of the rope for hoisting purposes. If it could be said that the superintendent knew, or should have known, that some of the pieces of lumber might slip from the sling and fall, the question arises as to whether or not it was reasonably to be expected that the danger would be increased to an employé on account of lumber being so placed. Would a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, have had any reason to anticipate any greater danger to any workmen engaged in hoisting the lumber by reason of having the lumber piled on the platform convenient to the rope, although under the hoisting apparatus? This must have been the case, or else Kershaw was not negligent in ordering the lumber so placed. The evidence is without dispute that this was the proper place to put the lumber to be hoisted, and plaintiff appears to rely simply upon the fact that the accident occurred as it did. There is no proof tending to show that, in so placing the lumber, Ker-

shaw acted or did otherwise than a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would have done, and nothing tending to show that a reasonable man would anticipate any additional danger from the placing of this lumber at this particular place.

We therefore conclude that the evidence was insufficient to show any negligence on account of which liability can be fastened on the defendants, and that therefore the affirmative charge should have been given also as to counts 3 and 5. It becomes unnecessary to treat other questions presented by this record.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.