JUAN BERNARD, ETC., Plaintiff and Appellant, *v.* PORTO RICO RAILWAY, LIGHT & POWER CO., Defendant and Appellee.

No. 8372. Argued March 19, 1942.—Decided April 9, 1942.

*Villamil & Santana Becerra* and *Pedro Juan Alcalá* for appellant, *Brown, González & Newson,* and *Carlos J. Faure* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Juan Bernard, in his capacity as father with *patria potestas* over his minor son Francisco Bernard, brought an action against the Porto Rico Railway, Light & Power Co., a public service company engaged in the operation of electric railway cars for the conveyance of passengers, to recover the sum of $10,000 as damages.

He alleged in his complaint, in short, that on March 9, 1937, between Stops 6½ and 7, in San Agustín Street, Puerta de Tierra, San Juan, one of defendant's cars struck said minor, injuring him and fracturing his right arm which had to be amputated, the accident being due to the fault of Balasquide, a conductor employed by the company, who while the car was in motion struck with a club the minor who was clinging to the outside railing of the car, causing him to fall and suffer said fracture.

The defendant denied the averments of the complaint and set up as special defenses, that the complaint did not state a cause of action; that the proximate cause of an accident, if any, was exclusively the fault, negligence, and unlawful conduct of the injured party and his parents; and that supposing that there was negligence on the part of its employees, there was also negligence on the part of the minor and his parents.

The case went to trial. Witnesses for both sides testified and the case was submitted to Judge Pablo Berga for judgment. The latter died before rendering judgment and there was a stipulation between the parties to submit the case for determination to Judge La Costa who, having weighed the evidence from the stenographic notes taken, said:

"The only question to be decided in this case is one of fact: What was the cause of the fall of Francisco Bernard? The evidence is conflicting on this point. The witnesses for the plaintiff testified that Bernard fell from the streetcar because its conductor had been, according to some, rapping him on the head with the knuckles (*dán-*

*dole cocotazos*), and, according to others, hitting him with a small stick as thick as the index finger an about eighteen inches long, whereas the witnesses for the defendant, all of whom were passengers on the streetcar, stated that they had not seen the conductor hitting the said Bernard.

"Although we had not the opportunity of seeing and hearing the witnesses testify, our life experience leads us to believe the witnesses for the defendant, among them, especially, Mrs. Edna Lowe and Mr. José R. Vicente. It is a matter of common knowledge that boys of about Bernard's age accustom to steal rides, not only on streetcars, but also on automobiles and busses. These youngsters, knowing that they are doing something they ought not to do, watch closely the conductors of said streetcars or vehicles so as to jump off quickly, it being unnecessary to hit them for them to do so. The evidence for the defendant shows, beyond any reasonable doubt, that it was not the first time that Bernard stole a ride on defendant's streetcars, and also that he knew that he was doing something wrong, for every time the car stopped he would come down, crouching so as not to be seen and when the vehicle started again he would continue.

"After an analysis of the evidence in the light of the law and the precedents, we reach the conclusion that the proximate, immediate, and direct cause of the accident was the negligence and unlawful conduct of Francisco Bernard in doing what he did. 60 C. J. pp. 376 and 377, § 278; *Ramírez* v. *American R. R. Co.*, 23 P.R.R. 298."

Then, referring to the doctrine of attractive nuisance, he went on to say:

"The doctrine of attractive nuisance mentioned by the plaintiff in his memorandum of authorities is not applicable to cases of this kind.

" '. . . Ordinarily a man who is using his property in a public place is not obliged to employ a special guard to protect it from the intrusion of children, merely because an intruding child may be injured by it. We have all seen a boy climb up behind a chaise or other vehicle for the purpose of stealing a ride, sometimes incurring a good deal of risk. It has never been supposed that it is the duty of the owner of such vehicle to keep an outrider on purpose to drive such boys away, and that, if he does not, he is liable to any boy who is injured while thus secretly stealing a ride. In such a case, no duty of care is incurred. In support of the doctrine many cases

are cited to which may be added, as being in point, *Western Railway of Ala.* v. *Mutch,* 97 *Ala.* 194, 21 L.R.A. 316; *Catlett* v. *St. Louis I. M. & S. Co.,* 57 Ark. 461; S. C. 54 Am. & Eng. R. Cas. 113; *Chicago, B. & Q. R. R. Co.* v. *Stumps,* 69 Ill. 409; *Hestonville Pass. R. Co.* v. *Connel,* 88 Pa. 520, 32 Am. Rep. 472; *Rodgers* v. *Lees,* 140 Pa. 12 L.R.A. 216; *Daniels* v. *New York & N. E. R. R. Co.,* 154 Mass. 349, 13 L.R.A. 248; *Snyder* v. *Hannibal & St. J. R. Co.* 60 Mo. 413; *Chicago & N. W. R. R. Co.* v. *Smith,* 46 Mich 504, 41 Am. Rep. 177; Patterson, Railway Accident Law, § 75; *Jefferson* v. *Birmingham Railway etc. Co.,* 38 L.R.A. 458, 459.

"From the opinion in *Underwood* v. *Western & A. R. Co.,* 31 S. E. 123, we transcribe as follows:

" 'Nothing is more alluring to a child than a passing vehicle, whether it be a buggy, carriage, dump cart, wagon, or a railway train; and if railroads are to be liable because boys, without the knowledge of the employees in charge, attempt to swing upon their passing trains, then the owners of the other vehicles named would be equally liable if a boy, without the knowledge of the person in charge, was injured while attempting to swing upon the rear axle or other part of such vehicles.' "

Finally, as regards the case of *Suárez* v. *Saavedra,* 52 P.R.R. 662, invoked by the plaintiff, he reached the conclusion that the same was inapplicable "inasmuch as we have not accepted the theory of the plaintiff that the servant of the defendant was beating the minor Francisco Bernard just as the latter fell from the streetcar of the defendant."

We have considered the pleadings and the transcript of the evidence in the light of the briefs of both parties and of the oral argument of the appellee, the only party which appeared at the hearing of the appeal, and we are convinced that the findings of fact and conclusions of law made by the trial judge are correct.

The testimony of Miss Edna Lowe, which corroborates the version of the accident given by the conductor of the defendant and some of its witnesses, in the sense that the fall was not caused by the raps administered by said conductor to the minor Francisco Bernard, thus placing the case outside the rule established in *Suárez* v. *Saavedra, supra,* to wit:

"A principal is responsible not only for the negligent and careless conduct of his agent but also for his criminal conduct when acting within the course of his employment," seems to us clear, persuasive, and convincing.

The witness was submitted to a long and able cross-examination and adhered to her previous statements without hesitation, without incurring in contradictions, with sureness and firmness. The witness had no interest in the controversy.

The conflict in the evidence having been adjusted in favor of the defendant, an affirmance of the judgment lies.

Mr. Justice Travieso did not participate herein.